Cox's Admrs. *vs.* Harris, *et al.*

(Decided February 28th, 1861.)

———

## Mary Cox and Rich'd T. Tubman, adms. *c. t. a.* of Wm. W. Cox, *vs.* Sarah Harris, Marbury Harris and Sam'l N. Cox.

A testator, by his will, executed and admitted to probate in 1857, devised and bequeathed that five of his negro slaves, whom he names, "*shall work for themselves, by paying my executors, annually, one cent per year hire,*" and by a residuary clause he devised the "balance" of his "property, real, personal and mixed," to certain named parties. Held:

1st. That the intent of the testator, as disclosed by this will, was, that

these negroes should be discharged from servitude, and be free in fact, but not in law, and such intent being contrary to the policy of the law, and in violation of the provisions of the Acts of 1817, ch. 104, and 1831, ch. 281, *the bequest to them is void.*

2nd. The bequest to the negroes being *void*, they pass to the residuary legatees, under the residuary clause of the will: there is a distinction in this respect between a void devise of real estate and a void bequest of personal property.

3rd. These negroes are not necessary parties to a proceeding between the residuary legatees and the executors, involving the right of property in them; the necessity of incidentally passing upon the *status* of the negroes, does not oust the jurisdiction of the court when dealing with them as property.

APPEAL from the Equity side of the Circuit Court for Charles county.

This appeal is taken from a decree passed upon a bill filed on the 2nd of November 1858, by the appellees against the appellants. The matters in controversy, and the facts of the case, are fully stated in the opinion of this court, and the following opinion of the court below, CRAIN, J.

"This case has been submitted to the court for its decision, on the bill and answer, and agreed statement of facts.

"The controversy grows out of the will of William W. Cox, of Charles county, dated the 24th of May 1853, and admitted to probate on the 29th of September 1857. By the fifth clause of his will he says: 'I devise and bequeath that the balance of my property, real, personal and mixed, shall be equally divided between Sarah Harris, Marbury Harris, Samuel N. Cox and Mary A. Cox.' Three of these residuary legatees have filed this bill, for the purpose of testing the validity and operation of the clauses of the will, by which he devises to his negro woman Kitty and her children, John, Catherine, Sarah and Charles, the proceeds of their labor, provided they shall pay his executors *one cent* per year hire.

"I am now called upon to give a construction to this will, and decide whether the bequest to the negroes of their own hire, is in contravention of the policy of the laws of the State? If I shall feel bound to declare the bequest void, as against the clearly expressed policy of the Legislature of the

State, the complainants will be entitled to a decree. It is the bounden duty of the court to give effect and operation to the devises and bequests of testators, if it can be done without injury to some well established principle of the law, or against the clear and manifest policy of the laws of the State. From the language used by the testator, it is clear to my mind that it was his intention and design to evade the laws of the State in reference to this class of her population. He does not propose to manumit them by any express words, nor does he do it *by* implication, for he requires them to maintain a relation inconsistent with freedom. Had he manumitted them by express language or implication, they would have been immediately under the provisions of the Act of 1831, ch. 281, and subject to the penalties and regulations prescribed by that statute. It is evident to my mind, that it was his intention and design to evade the provisions of that law, and secure to his servants a residence in Maryland, and the enjoyment of the proceeds of their labor, without disturbance or molestation. This kind of equivocal servitude is against the expressed provision of the Act of 1817, ch. 104. The penalties denounced against persons permitting their slaves to act as free, and hire themselves, are severe. William W. Cox, living, could not permit his servants the enjoyment of such privileges, and I cannot recognize his right to evade the law by his last will and testament, and entail such an evil on the community.

"In the case of *Negro Charles*, as reported in 1 *G. & J.*, 390, the Court of Appeals decided that the devise of freedom to negro Charles, by his master, on condition that he would pay the sum of ten dollars annually, operated to give the negro freedom, and was not a condition precedent. But in this case the testator, Cox, does not give freedom on conditions, but expressly requires that the negroes shall pay hire to his executors. The reservation of hire was designed and intended to protect the negroes against the existing laws of the Legislature against free negroes, and probably he anticipated further legislation hostile to the residence of free negroes among us. Had he manumitted his negroes, the grant of

freedom would have subjected them to the laws made with particular reference to their residence in the State. To ascertain the intention of the testator, it is necessary to look at the language used by him in granting the privileges to the negroes; by the words of the will he does not give them freedom, but says that they shall work for themselves, and shall pay hire to his executors. It has been contended, in the argument before the court, that by the clauses of the will, the negroes were manumitted by implication; but I cannot recognize the right of the court to declare negroes manumitted by implication, when the testator imposes on them a duty and obligation inconsistent with freedom, and establishes the relation of master and servant between his executors and the negroes. The policy of the Legislature in prohibiting slaves from acting as free, was wise and salutary, and courts of justice should not permit it to be evaded. To give it proper effect and operation, it is the bounden duty of the court to declare this bequest void, and I will sign a decree in conformity to these views."

From the decree passed in conformity with this opinion, the defendants appealed.

The cause was argued before Tuck, Bartol and Goldsborough, J.

*Alex. Randall,* for the appellants, argued:

1st. That the second clause is a bequest of freedom to the negroes in question, by implication, and the annexed condition of paying hire to the executors is void. 5 *H. & J.,* 190, *Hall vs. Mullin.* 4 *H. & J.,* 262, *Burroughs vs. Negro Anna.* 1 *G. & J.,* 390, *Miller vs. Negro Charles.* 3 *Md. Rep.,* 119, *Vansant vs. Roberts.*

2nd. That if the negroes are not entitled to their freedom, still the bequest under this clause of the will is a valid legacy to them and to the *executors,* and, at all events, these negroes do not constitute any part of the *residuum* of the personal estate of the testator, nor pass to the appellees as residuary legatees. 6 *Gill,* 388, *State vs. Dorsey.* 3 *Md. Rep.,* 425,

*Steuart vs. Williams.* 1 *Gill,* 402, *Jones vs. Earle.* 2 *Lomax on Excrs.,* 180, 181. 9 *Md. Rep.,* 575, *Billingsley vs. Tongue.* 13 *Md. Rep.,* 427, *Tongue vs. Nutwell.*

3rd. That the appellees having accepted the bequests under this will, have elected to abide by all its provisions, and cannot deny to these negroes and the executors the rights which this second clause in the will confers upon them. 5 *Md. Rep.,* 306, *Marriott vs. Badger.* 6 *Md. Rep.,* 28, *Pierce vs. Negro John.* 2 *Roper on Legacies,* 1566. 6 *G. & J.,* 231, *State vs. Bank of Maryland.* 2 *Gill,* 181, *McElfresh vs. Schley.*

4th. That if the object of this clause of the will is not for any cause capable of being executed in its very terms, the court will substantially execute it in giving freedom to the negroes, and require them, as such, to leave the State. 1 *Md. Ch. Dec.,* 355, *Negro Monica vs. Mitchell.* 2 *Md. Rep.,* 104, *Rieman vs. Peters.*

5th. That if the right of these negroes to freedom is involved in this case, they should have been made parties, else their right to freedom should be tried on petitions for freedom, and by a jury. 4 *Gill,* 249, *Peters vs. Van Lear.* 4 *Md. Ch. Dec.,* 537, *Allein vs. Hutton.* 6 *Gill,* 299, *Cornish vs. Wilson.* 5 *Md. Rep.,* 287, *Townshend vs. Townshend.*

*Robt. S. Reeder* and *Frank H. Stockett,* for the appellees, argued:

1st. That the devise to these negroes, in the second clause of the will, which, in fact, gave them their freedom, contrary to the provisions of the laws of this State, and against public policy, is void. This clause is in fatal conflict with the whole policy of the State, in relation to the negro population, and particularly in conflict with the Acts of 1817, ch. 104, and 1831, ch. 281, the former of which prohibits slaves from going at large or hiring themselves, and the latter requires all negroes manumitted after its passage, to remove or be removed from the State. See, also, on this point, 1 *Md. Ch. Dec.,* 356, *Negro Monica vs. Mitchell.* 2 *Kent,* 53. 8 *Gill,* 314, *Spencer vs. Negro Dennis.*

2nd. That the devise to them being void, the negroes remained precisely as if they had never been mentioned in the will, and no such clause had been therein inserted, and the debts and other legacies having been paid, the appellees, as residuary legatees, under the fifth clause of the will, are entitled to three-fourths of the value of these negroes. 1 *Jarman on Wills*, 294, and *note*, and cases there cited.

GOLDSBOROUGH, J., delivered the opinion of this court.

The record in this case shows, that a certain William W. Cox, late of Charles County, deceased, died in the year 1857, having made his last will and testament, which, after his death, was admitted to probate in the orphans court of that county, in September of the same year.

By the 2nd clause the testator devises and bequeaths as follows: "I devise and bequeath that my negro woman Kitty, and her children, John, Catharine, Sarah and Charles, shall work for themselves, by paying my executors annually, one cent per year hire;" and by the 5th clause, he devises and bequeaths as follows: "the balance of my property, real, personal and mixed, shall be equally divided between Sarah Harris, Marbury Harris, Samuel N. Cox and Mary Cox."

And "lastly, I constitute and appoint my sister, Mary Cox, and Samuel N. Cox, my sole executors of this, my last will and testament."

Samuel N. Cox, one of the executors named in the will, renounced the executorship, and letters of administration, with the will axnexed, were granted to Mary Cox and Richard T. Tubman, the defendants below and appellants, who took upon themselves the burden of the administration, and it is admitted by the solicitors for the complainants and defendants in this record, that "the administrators of William W. Cox, have paid over to the complainants their proportion of all the personal estate belonging to William W. Cox, deceased, except the portion of negroes Kitty, John, Catharine, Sarah and Charles," which the complainants claim under the will, and the right of the complainants thereto is denied by the answer.

Cox's Admrs. *vs.* Harris *et al.*

The bill of complaint was filed by Sarah Harris, Marbury Harris and Samuel N. Cox, on the equity side of the circuit court for Charles county, on the 2nd day of November 1858, and amongst other allegations, the complainants "especially charge, that negro woman Kitty and her children John, Catharine, Sarah and Charles, mentioned in the second clause or item of said will, by the true construction of the same, belong to the complainants and Mary Cox, as residuary legatees of said testator, William W. Cox," and that the complainants are entitled to three-fourths of said negroes.

The complainants then pray the court to pass a decree directing the defendants to pay over to the complainants three-fourths in value of negroes Kitty, John, Catharine, Sarah and Charles.

The defendants filed their answer, and admit the renunciation of the executorship as stated in the bill, their appointment as administrators with the will annexed, and their administration of the personal estate. They allege in the concluding part of their answer, that they believe and are advised, that under a fair construction of the said will, the said negroes Kitty, John, Catharine, Sarah and Charles, are entitled to their freedom, and submit to the court the construction of said last will and testament, and what interest the complainants have in said negroes under said will.

The cause was set down for hearing, by consent, upon bill, answer and agreement of counsel, heretofore mentioned.

The court below, on the 24th day of May 1859, passed a decree in conformity with the prayer of the complainants, directing the defendants to account with the complainants for three-fourths of negroes John, Catharine, Sarah and Charles, mentioned in the proceedings, or three-fourths of the value of said negroes, and referred the case to the auditor, to ascertain the value of said negroes or three-fourths of them, and directed the auditor to take proof as to the value of the same. From this decree the defendants appealed to this court.

The counsel for the appellants insists, that the decree of the court below should be reversed, because the negroes mentioned in the 2nd clause of the will, take their freedom

by implication, and that the condition thereto annexed is void: that this court could not deprive them of their right to freedom in a proceeding to which they were no parties; that if they are not free under the will, the court below erred in recognizing the right of the appellees to claim their proportion of the negroes or their value, under the residuary clause of the will. We should regard with favor, the propriety of the point made by the appellants' counsel, that the negroes would take their freedom by implication, if the testator had confined himself to that provision of his will, in which he bequeathed that the negroes should *"work for* themselves," bestowing upon them, thereby, such a privilege as would be equivalent to a gift of the fruits of their labor, which they could only enjoy in a state of freedom. Such a bequest would have brought the case within the ruling of this court on former occasions:—See *Hall vs. Mullen*, 5 *H. &* *J.*, 190. *Burroughs vs. Negro Anna*, 4 *H. & J.*, 262. But the condition annexed, justifies us in distinguishing between the intent of the testator, inferable from the will and the intent as implied by law; if they conflict the last must prevail. The negroes are to take their freedom, if at all, in a particular way—they are to work for themselves, *paying* *hire to the executor.* The testator himself could not have suffered his negroes to go at large and work for themselves. It would have been in direct contravention of the Act of 1817, ch. 104. Neither can he impose upon his executor such a responsibility; they could not be employed without the assent of the executor, he to receive part of the compensation as *hire.* The testator, doubtless, intended to discharge his negroes from servitude; that they should be free in fact, but not in law. In such case, the intent contrary to the law, or its policy, must render the whole bequest void, and we are of opinion, that the will, if executed, would be *in* violation of the Act of 1817, ch. 104, and the Act of 1831, ch. 281.

There is no force in the objection made by the appellants, that the negroes are necessary parties to this proceeding, as their right to freedom under the will is involved. In this case we are dealing with them as property; and the jurisdic-

tion of the court to pass upon the rights of the parties litigant arising under the will, cannot be ousted by reason of the necessity of incidentally passing upon the *status* of the negroes. According to our construction of the will they take no rights under it, and being slaves, could not properly be made parties to the proceeding.

As to the question, whether the appellees are entitled, as residuary legatees, to their share of the negroes or their value, the bequest being void, we are of opinion, that their right is recognized by the whole current of authorities, both in England and in this country.

See *Brown vs. Higgs,* 4 *Vesey,* 708, *Sumner's Edition,* and the cases there cited in *note* 6, also *Holmes vs. Franciscus,* 2 *Bland,* 560.

The counsel for the appellants referred, in their argument, to the case of *Tongue vs. Nutwell,* 13 *Md. Rep.,* 415. That was an action of ejectment, brought to recover *real estate* upon a void devise; we do not intend to disturb the law established by that case. The rights of *an heir at law* have always been regarded, even in this State. We consider the distinction between a void devise of real estate and a be-quest *of personal* property, as one which should be maintained, and the authorities above referred to, justify the distinction.

Concurring with the judge below in his interpretation of the will, and also as to the mode of making the said distribution, we should affirm the decree, but that there appears to have been five negroes mentioned in the will, and four only mentioned in the decree. Therefore, to give the parties the full benefit of the will, we will remand the case without affirming or reversing the decree, that it may be proceeded with in the court below, according to the principles of this opinion, as to all the negroes, in respect to whom relief was sought by the bill.

The costs are to be paid out of the estate.

*Cause remanded.*

(Decided March 1st, 1861.)