PHILIPPA E. DEFORD, Guardian *ad litem* of HAR-
RIET B. DEFORD and ELLA V. DEFORD, Infants,
*vs.* THOMAS DEFORD, CATHARINE A. WEBB, and
others.

*Void Trust—Perpetuity—Void Devise—Void Bequest.*

Where a trust is created which may continue beyond a life or lives in
being at the time of its commencement, and twenty-one years and a
fraction thereafter, it is void as infringing the rule against perpe-
tuities.

Where a devise of real estate is void by the rules of law, the land descends
to the heirs-at-law of the testator, and does not pass to the residuary
devisee. But where a bequest of personal property is void, the prop-
erty passes to the residuary legatee.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed by Catharine A. Webb and
Benjamin F. Deford, children of the late Benjamin Deford,
and executors under his will, and by John D. Kremelberg,
as father, guardian and next friend of his three children,
grand-children of the testator, against the appellants, Harriet
B. Deford and Ella V. Deford, also grand-children of the
testator, and others. The bill charged that a doubt had
arisen whether the seventh clause of the testator's will had
not created, or attempted to create, a perpetuity contrary to
law; by which doubt, the complainants, Catharine A. Webb,
and Benjamin F. Deford, the trustees named in said clause,
were greatly embarrassed in the administration of the estate.
The bill prayed a judicial interpretation of the clause in ques-
tion. Two of the children of the testator answered, insisting
that the clause in question was void as intending to create a
perpetuity contrary to law, and that the property therein
mentioned descended to the heirs-at-law of the testator. One
of the grand-daughters of the testator answered, submitting
the question to the judgment of the Court; another answered,
maintaining the devise.

The Court (PINKNEY, J.) on the 3d of July, 1871, passed a decree declaring that the said seventh clause was void and of no effect, and that the testator "died intestate of all of the estate and property by the said clause sought and attempted to be unlawfully disposed of, and limited in trust."

From this decree the present appeal was taken in behalf of the infant children of Isaac Deford, and of their mother, his widow.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ROBINSON, J.

*Charles Marshall* and *S. Teackle Wallis,* for the appellants.

The decree of the Circuit Court, in so far as it holds that a perpetuity was attempted, and that there was an intestacy as to the realty, is unobjectionable, but manifest error occurred in the ruling that there was any intestacy as to the personalty: the decree should have been that the personalty passed under the general bequest of the residue.

It is settled law in Maryland that when a devise is inoperative, the realty passes to the heir-at-law, and the personalty to the residuary legatee. The tenure of property has been accommodated to this view of the law, and it is too late to criticise the reasons upon which it was originally decided. *Tongue's Lessee vs. Nutwell,* 13 *Md.,* 415 ; *Cox's Adm'rs. vs. Harris,* 17 *Md.,* 31 ; *Helms vs. Franciscus,* 2 *Bland,* 560.

The appellees, the Kremelbergs, seek to sustain the decree in this case by the ruling in *Barnum vs. Barnum,* 26 *Md.,* 174, which is claimed to have been, that Mr. Barnum died intestate of both the real and personal estate. The language which was used by the Court, on page 174, might as well be applied to the realty alone as to the realty and personalty, and in any event it is quite apparent that the question was not before the Court in that case at all. It would be difficult to convince the Court that it was the purpose of the former Court of Appeals to overrule, without discussion and without

particular reference to it, the judgment which it had recently pronounced in *Cox's Adm'rs. vs. Harris*, 17 *Md.*, 31, and which, in the language of the Court, "is recognized by the whole current of authorities both in England and in this country."

It can make no difference that both realty and personalty were the subjects of the devise. In such case the realty will take one direction and the personalty another.

The different rules as to perpetuities, applied under the same devise to realty and to personalty, are illustrations of this view; and many cases of void devises have occurred in which the testator has been treated as intestate as to the real estate, and not intestate as to personalty.

In fact, if the distinction between the right of the residuary legatee as to realty, and his right as to personalty, is to be presumed, it is impossible to make the rule different under a will of realty and personalty from that which would prevail as to the will of realty and as to a will of personalty. If an uniform interpretation is to be given to a will devising both realty and personalty, by which rule is the Court to be governed; by that applied to real estate, or that applied to personalty? It is obviously impossible to select either rule of interpretation as to both, so long as the distinction alluded to is kept up under any circumstances, though probably, if a selection were to be made, it would be more proper to make both real and personal property pass to the residuary legatees, as it is for them that the testator has expressed a general preference.

*Alexander B. Hagner*, on behalf of the children of Mrs. Kremelberg, argued

That if the seventh clause of the will be void, the testator must be held to have died intestate of *all* the property therein mentioned, whether real or personal, and it will in no degree be controlled or disposed of by the residuary clause.

The *intention* of the testator was evidently against any such enlarged interpretation of the residuary clause. He first

Deford, Guar., *et al. vs.* Deford, *et al.*

carefully culls from his estate all those portions which he is *unwilling* should pass under the residuary clause, and in each instance, in effect, declares that the particular property disposed of by the several special devises and bequests, should *not* pass as part of the *residuum.* With the utmost particularity, evincing a studied design, he *withdraws* the property enumerated in the seventh clause from that portion of his estate which he is willing to bestow upon the five beneficiaries named in the residuary clause. He certainly supposed that all the devises he had incorporated in his will were equally valid, and the instrument, at the time of his death, is to be read as if he had declared in express words that *none* of the property mentioned in the previous clauses of the will should pass under the residuary clause, which was therefore *limited* by the previous clauses.

That any of the devises should afterwards fail, cannot affect the question as to what he intended should pass under the eighth clause, in the absence of an express provision that the property thereby given should be increased in the event of the failure of any of the other devises. The intention of the testator can no more be relied upon as the excuse for transferring to the *residuum* the property specially dedicated to the objects of the seventh clause, than it could be invoked to swell any other devise of the will with property left by some other clause which had happened to fail of effect.

There is nothing like an express provision in the will, declaring that the *personalty* in the seventh clause should pass in any event, as part of the *residuum,* as is the case with reference to the fifth clause; and it can only do so, if at all, by force of some rule of construction.

But it is a cardinal principle, in the interpretation of wills, that the heir is not to be disinherited by implication. If the property is not effectually given in some other direction, the heirs and distributees will take it, even *against* the testator's intentions, and *a fortiori* in the absence of such intention.

If the claim of the appellants were allowed, the children of one of the testator's daughters would be deprived of all participation in the personalty in the seventh clause, in the absence of any expression by the testator declaring this to be his wish or intention.

But the authorities are opposed to the distinction sought to be drawn between the disposition of the realty and of the personalty in the seventh clause, in the event of his intestacy in respect thereof. It is conceded that the *real* estate cannot pass under the residuary clause. *Tongue vs. Nutwell,* 13 *Md.,* 416.

In *Barnum vs. Barnum,* 26 *Md.,* 174, the Court expressly held, that if the trust therein spoken of were void, " the testator would be held to have died intestate of *his hotel property,*" and that " it would not pass by the residuary clause." The case shows that " the hotel property " consisted as well of fee simple estate as of leasehold, furniture, chattels, &c. This decision is therefore to be considered as overruling *Cox's Adm'rs. vs. Harris, et al.,* 17 *Md.,* 23, so far as that case supports the appellants' claim. The case of *Barnum vs. Barnum,* in this particular, is in accord with many of the best considered cases, ancient and modern. *Dyose vs. Dyose,* 1 *P. Wms.,* 305 ; *Davers vs. Dewes,* 3 *P. Wms.,* 40 ; *Skrymsher vs. Northcote,* 1 *Swanst.,* 566 ; *Attorney General vs. Johnstone,* 2 *Amb.,* (577) ; *Gravenor vs. Hallum,* 2 *Amb.,* (645) ; *Wainman vs. Field, Kay,* 507 ; *Collins vs. Wakeman,* 2 *Ves., Jr.,* 683.

It is contrary to another well recognized canon of construction, to assign one purpose to a testator as to his realty, and another as to his personalty, in the same clause. *Woodland vs. Wallis,* 6 *Md.,* 166 ; *Hatton vs. Weems,* 12 *G. & J.,* 107.

And since the real estate passes as undisposed of property, upon the theory that the testator had not effectually expressed his intention that it should pass under the residuary clause, in case the seventh clause should be held void, the personalty should likewise pass as in a case of intestacy, if the seventh clause is void, since there is the same absence of intention that it should pass under the eighth clause.

If the Court should be of the opinion that the personalty passes under the residuary clause, in the event of the seventh clause being held void, it will be insisted by the appellees that it is not void as creating a perpetuity contrary to the provisions of the law on the subject of executory devises.

It is admitted that the question of remoteness is to be determined with regard to *possible* events, and therefore, if the limitation is such that it *may* extend beyond the limit allowed by law, the devise will be void for remoteness. But it is also equally clear that "the *remoteness* against which the rule for prevention of perpetuities is directed, is remoteness IN THE COMMENCEMENT, or *first taking* effect of limitations, and not in the *cessor* or *determination* of them." *Lewis on the Law of Perpetuity*, 52 *Law Library*, (173); *Supplement to Lewis on Perp.*, 66 *Law Library*, (164); *Boughton vs. James*, 1 *Coll.*, 26; *Perry on Trusts*, secs. 377, 381; *Trickey vs. Trickey*, 3 *M. & K.*, 560.

Does the limitation to the grand-children in the seventh clause *necessarily commence* within the period of a life or lives in being at the death of the testator, and the term of twenty-one years and a fraction of a year thereafter? If it does, then the limitation is not void as a perpetuity. The question should be answered in the affirmative.

The trustees are to apply the net income from the property to the grand-daughters living at the testator's death. If *these* were the only grand-daughters, there could be no difficulty, since they were actually living at the testator's death. It is supposed a difficulty may arise with respect to the grand-daughters who may be born *after his death*. But it is evident that all the grand-daughters who may be born *after* the testator's death, *must* be born during the lives of their mothers respectively, or within a fraction of a year after the death of their respective fathers. They *must* therefore come into existence within the time allowed by the rule, viz: within a life or lives in being at the death of the testator, and the term of twenty-one years and a fraction beyond. *Arnold vs. Congreve*, 1 *Russ. & Mylne*, 209.

It seems equally clear that the interest given to each grand-child born after the testator's death, vests in such grand-child *at its birth.* If this be so, it is of no consequence how remote the *cesser* or *determination* of the estate of the trustees may be, even if half a century may have elapsed before the number of grand-daughters may be reduced to three. That the termination of the trust is to be delayed until a large number of lives must end, is of no importance upon this point. The aggregate number of lives is regarded but as one, even if they are as numerous, in the words of the books, as the soldiers in the army. *Lewis on the Law of Perpetuity,* 52 *Law Library,* (179.)

Is the validity of the devise impaired by the provision that "the heirs and distributees" of such grand-daughters as may have died before the termination of the estate, are to participate in the distribution of the fund? This relates only to remoteness in the *cesser* of the trust estate, and cannot extend or restrian it. The period of distribution will be the same, whether the heirs and distributees of the deceased grand-daughters are to participate or not. Whenever there are less than three grand-daughters living, the fund is to be distributed, and if the interest of the respective grand-daughters *vested* within the time allowed by the rule, the remoteness of the time of distribution, or the character of those who are to share the property, is of no importance.

The devise would certainly be good as to the grand-daughters living at the time of the distribution, and if so, it will be sustained as to *them,* even if it were illegal as to the heirs and distributees of such as had died. If it were illegal as to the latter, those shares would go to the heirs and distributees of the testator. *Arnold vs. Congreve,* 1 *Russ. & Mylne,* 209.

But the devise or bequest to each grand-daughter for life, and after her death to her "heirs and distributees," vests a *fee simple* estate in each grand-daughter, although liable to be increased or diminished by deaths or births. If this be so,

each grand-daughter may sell or dispose of her interest under the seventh clause, before the period of distribution; and hence, the *corpus* of the estate will not be inalienable during any prohibited period. *Perry on Trusts, sec.* 386, and cases there cited.

Indeed, the trustees have authority to sell the entire property, and invest the proceeds anew; and it was admitted in the Court below, as appears from the opinion of the Judge, that this circumstance would extricate the case from the supposed difficulties arising from the rule against perpetuities. *Bland vs. Williams,* 3 *My. & Keene,* 411; *Lewis on the Law of Perpetuity,* 66 *Law Lib.,* (194;) 1 *Jarman on Wills,* 234; 2 *Jarman on Wills,* 76; *Lewis on Perp.,* (167,) (173,) (559;) *Routledge vs. Dorril,* 2 *Ves., Jr.,* 365; *Act of* 1861–'62, *ch.* 161.

The limitations in the case of *Barnum vs. Barnum,* 26 *Md.,* 119, differ very essentially from those in this case, and it is not an authority against the validity of the seventh clause.

MILLER, J., delivered the opinion of the Court.

The decree below declares the seventh clause of the will of Benjamin Deford void and inoperative, because it infringes the rule against perpetuities. This part of the decree cannot be reversed without overruling the decision in *Barnum's Case,* 26 *Md.,* 119.

The testator commences this clause of his will by declaring, " Whereas I have now a number of grand-daughters and *may have many more,* and believe I will confer more good on my family by making proper provisions for my said grand-daughters than by any other disposition of my property," and he therefore "gives, devises and bequeaths, certain described real estate and bank stock to two trustees and the survivor of them and the heirs, executors, administrators and assigns of the survivor *in trust,* to and for the following uses and purposes, viz: to receive the rents and profits thereof and keep the same in order, to pay all taxes, expenses and charges, including a reasonable compensation for services as trustees,

and to apply and use the balance, being the net income thereof, in the support, education and maintenance of such grand-daughters, as I now have, or may hereafter have, *or may at any time hereafter descend from any of my five children now alive,* for the just and equal benefit of the said grand-daughters during their respective lives, which said trust *is to be continued* for the benefit of the said grand-daughters *so long as there may remain living at least three of them, but no longer,* but in case there shall not be alive of them the said grand-daughters at least three, *then* the trust hereby created is to end and be determined, and the said property is to be *divided absolutely* among my said grand-daughters who may then be alive, and the heirs and distributees of such of them as may have previously died, *per stirpes* and not *per capita;* the income of said property during the continuance of the said trust to be divided between my said grand-daughters who may be living, and the child, children, descendant or descendants of such as may die during the said trust, leaving at the time of such death any descendant, *per stirpes* and not *per capita."*

It is plain this trust *may continue* beyond a life or lives in being at the time of its commencement, and twenty-one years and a fraction of a year, to cover the period of gestation, thereafter, and that during this time the property may be placed *extra commercium.* The trustees are to hold the property and apply its net income not solely for the benefit of grand-daughters living at the testator's death, but also for the benefit of all that may at any time thereafter descend from any of the testator's five children alive at his decease, and is to continue until his grand-daughters, then born or thereafter to be born, be reduced in number to two; then only is the trust to cease and the property to be divided. Thus many grand-daughters of the testator's living children may be born years after his death, and their number may not be reduced to two until long after the expiration of the lives in being when the will took effect, and the allowed period thereafter.

During all this time the trust by express terms is continued. Each after-born grand-daughter as she comes into existence steps in and derives the benefit of the income, for her education and maintenance, equally with those living at the testator's death, and if any one of the grand-daughters, whether then living or after-born, dies without leaving issue, before the period of distribution arrives, the property all goes to those *in esse* at that time, and the then living descendants of such as may have previously died. The trust is fastened upon the whole for the benefit of parties in being when the period of distribution arrives, and that period may not arrive until long after the expiration of the time within which the law permits estates to be tied up.

In *Barnum's Will* the devise was to trustees in trust with a leasing power to continue, " so long as my said children, or any children or descendants of them, or of any of them, left by them, or any of them, at the death of them, or any of them, shall live," and the Court held it void because the trust might extend so as to embrace persons and lives not *in esse* at the time of the testator's death. After stating the rule that the law would not permit an estate to be so limited as by possibility to extend beyond a life or lives in being, and twenty-one years and a fraction thereafter, they said the case before them did not present the question " as to the future vesting of an executory estate, in order to determine the validity of the preceding one; but simply whether the *trusts of the will require in their execution a longer period* than that prescribed by the rule against perpetuities, and, therefore, render the property devised to the trustees inalienable during that time; if so, the law denounces the devise in trust a sa perpetuity, and declares it void." All the reasoning in that case applies here, and we regard it as a binding and conclusive authority which must, notwithstanding the very able argument of counsel to the contrary, control our judgment in the present case. The Courts in prescribing and settling the rule against perpetuities have founded it in true wisdom. They have thereby

limited the indulgence of the natural inclinations of men to fix control over their property after death, in order to provide for those of their own blood who may come after them, by a careful consideration and regard for "those larger principles of public policy which are essential to the welfare of communities and States." The decision in *Barnum's Case* is a fair and just application of the rule, and in addition to the authorities therein cited for its support, reference may be made to *secs.* 382 and 383 of a most excellent work (*Perry on Trusts*) recently published, where it is said: "A perpetuity will no more be tolerated when it is covered by a trust, than when it displays itself undisguised in the settlement of a legal estate. 'If,' as Lord GUILFORD said, 'in equity you could come nearer to a perpetuity than the Common Law admits, all men, being desirous to continue their estates in their families, would settle their estates by way of trust, which might make well for the jurisdiction of Chancery, but would be destructive to the commonwealth. Therefore the creation of a trust or equitable interest, which cannot vest in the object of the trust within the time limited by law for the vesting of legal estates, will be nugatory. Thus where a testator devised his real estate to trustees, to apply the rents to the support of his wife, during the life of the wife, and on her death to convey the estates to all his present and future grand-children, as they respectively attained the age of twenty-five years, to hold to them and their heirs as tenants in common, it was held that the trust to convey was void, for the reason that some of the grand-children might not become twenty-five years old until after the expiration of the life of the tenant for life, and twenty-one years in addition." The fact that the testator, in another clause of his will, empowers his trustees to change the investments and reinvest as often as may be deemed proper, by *making sales* or otherwise, does not change the nature of the trust, which *may* extend beyond the time limited, and does not therefore extricate the case from the operation of the rule; the *possi-*

*bility* of such continuance the law regards as decisive in determining the question of perpetuity or not.

The decree after declaring the seventh clause void, further declares the testator to have died *intestate of all the estate and property* thereby attempted to be disposed of, thus devolving the *bank stock* therein mentioned upon the next of kin. The appellants insist this is error, and that this stock as personal property passes under the residuary clause.

This question has also been settled by express decisions of this Court. In *Tongue vs. Nutwell*, 13 *Md.*, 415, it was decided that in case of a devise of real estate void by the rules of law the land descended to the heirs-at-law and did not pass to the residuary devisee. In their opinion the Court admit the preponderance of authority outside of Maryland was in favor of the residuary devisee, and base their decision upon *Lingan vs. Carroll*, 3 *H. & McH.*, 333, a case decided nearly seventy years before, never overruled or doubted, but followed and acquiesced in by the legal profession as sound Maryland law. In *Cox vs. Harris*, 17 *Md.*, 23, a similar question in reference to a void bequest of personal property arose, and the Court held the residuary legatees entitled to it, according to the law recognized by the whole current of authorities both in England and in this country. They referred to *Tongue vs. Nutwell*, and said, they did not intend to disturb the law established by that case, that being a devise of realty, affecting the rights of an *heir-at-law* which have always been regarded even in this State, and that the distinction between a void devise of real estate and a bequest of personal property, was sanctioned by the authorities referred to, and should be maintained. In *Barnum's case*, the Court remarked that if the clauses declared void and the residuary clause constituted the entire will, the testator would be held to have died intestate of his "hotel property," under the ruling in *Tongue vs. Nutwell.* In using the terms *"hotel property"* the Court, in our opinion, had reference to the real estate of which the property thus described chiefly consisted, and did not advert to the fact

that the furniture in the hotel and other personal estate might be regarded as included therein. We cannot impute to the Court an intention, simply by the use of these two words in this connection, without reference to, or any comment upon it, to overrule the case of *Cox vs. Harris,* a recent and well considered adjudication upon the very question of the right of residuary legatees to personal estate attempted to be disposed of by a void bequest. The same Judge who delivered the opinion of the Court in *Cox vs. Harris,* concurred without remark in the decision in *Barnum's case,* and we must infer that by the latter decision the Court meant merely to adopt and follow the law of *Tongue vs. Nutwell,* respecting real estate to which alone they refer. As to the intention of the testator to be derived from the terms of the residuary clause in the will before us, no doubt can exist if the rule in *Cox vs. Harris,* and the authorities there cited, is ever to be applied. The language "rest and residue of my estate" is as comprehensive as possible, and it is only the decision in *Tongue vs. Nutwell,* that saves the realty to the heirs at law. From these views it follows the decree is erroneous in declaring an intestacy of the bank stock mentioned in the seventh clause of this will, and it must therefore be reversed, and the cause remanded in order that the decree may be reformed in this respect.

We have decided the seventh clause of the will to be void without considering whether any of the appellees have the right to raise that question, because we consider it presented by the appeal taken by the appellants, and the position they assume in this Court. They insist the decree is wrong because it takes the bank stock away from them as residuary legatees. Whether that be error or not must depend in the first place upon the validity or invalidity of this clause, for if that be valid the appellants as residuary legatees have no title and have not been prejudiced by the decree they have appealed from.

*Decree reversed and
cause remanded.*

(Decided 22d May, 1872.)