RICHARD H. GOLDSBOROUGH, and R. FRANCIS GOLDS-
BOROUGH, by his next friend R. H. GOLDSBOROUGH
*vs.* ELLEN F. MARTIN.

*Construction of a Will—Perpetuity-rule—Rule in Shelley's case—
Trust kept open to await a Contingent gift over.*

A testator who died in October, 1872, by his will devised one half of his
estate, real and personal to his wife, and. the other half to his wife in trust
for his daughter, H., a married woman, to be invested, and the rents and
profits collected by said trustee and paid over to his daughter.   The trustee,
in her discretion was empowered to use the whole or a part of the income for
the daughter, and to invest any surplus for her benefit; and also to use for her
benefit the said surplus.   She was further authorized to pay over to or use for
the daughter any part of the trust property, the daughter's receipt to be a full
discharge therefor; and to sell real estate and dispose of the proceeds as in
the will directed; and she was not to be liable for loss arising from any
investment.   The will further provided: "And in case my said daughter,
H., shall die without leaving issue, then I give, devise and bequeath the
whole of the estate, hereby given in trust, to my dear wife, in fee-simple.
And in case my said daughter shall die, leaving issue, the trust hereby
created shall extend to and be executed for said issue, in the same manner
as directed for and on behalf of my said daughter.   And in case such issue
shall die in the life time of my said wife, then I give the whole trust property
to my said wife in fee-simple. ❈ ❈ ❈ ❈ ❈ ❈ ❈ ❈ ❈ ❈ ❈ ❈ ❈
And I do order, direct and will, that my said wife may, by will or other
instrument of writing, designate and name a proper and suitable person to
succeed her in said trust, unless the property shall have become hers, by the
happening of the contingencies above mentioned."   The testator left surviv-
ing him his widow, and his said daughter and sole heir-at-law, the wife
of G.   In December, 1872, the daughter died intestate leaving surviving
her, her said husband; an infant son born in March, 1871; and an infant
daughter, born in November, 1872, who died in October, 1873.     In
November, 1873, G. filed a bill in his own right, and as next friend of his
son against the widow and trustee, claiming that the above devise was
void as creating a perpetuity, and that, there thus being an intestacy as to the

property so attempted to be devised, the same descended to his wife as heir-at-law and distributee, and upon her death and that of her infant daughter, vested in her son, subject to the life estate of her husband. The bill prayed for partition of the real estate or a sale for the purpose of partition, and an account of the rents and profits thereof, and for general relief. Upon appeal from a *pro forma* decree dismissing the bill, it was HELD :

1st. That the clause of the will extending the trust for the benefit of "the issue" of the testator's daughter, was void as violating the rule against perpetuities. (Referring to *Burnum vs. Barnum*, 26 *Md.*, 119; *Deford vs. Deford*, 36 *Md.*, 168.)

2nd. That the previous trust for the benefit of the testator's daughter was valid.

3rd. That the daughter took an equitable life estate in the property so devised; an estate-tail by implication being prevented by the operation of the Act of 1862, ch. 161; and the rule in Shelley's case not being applicable.

4th. That the trust must continue until the contingency of the death of the issue of the testator's daughter during the life of his widow, is determined. (Upon authority of *Monypenny vs. Dering*, 2 *De G. McN. & G.*, 145.)

5th. That the decree below must be affirmed.

APPEAL from the Circuit Court for Talbot County, in Equity.

The facts are stated in the opinion of the Court.

The cause was argued before STEWART, MILLER, ALVEY, and ROBINSON, J.

*R. H. Goldsborough* and *S. Teackle Wallis,* for the appellants.

The life by which the perpetuity period is to be measured in this case is the life of the first taker, but giving the most comprehensive construction to the rule it can only include the lives selected and specifically named by the testator in the limitation itself, viz: the lives of H. M. F. Goldsborough and her mother, Ellen F. Martin. If this trust *may* endure for a longer period than their lives and

twenty-one years, &c., thereafter, it violates the rule and is void. *Lewis on Per.* (*Law L.*, 52,) 169 *mar. ; Williams' R. P.* (*4th ed.,*) 305 *mar. ; Barnum vs. Barnum*, 26 *Md.*, 119 ; *Deford vs. Deford*, 36 *Md.*, 168 ; *Cook vs. Cook*, 2 *Vernon*, 545.

Should the infant appellant survive his grandmother, this trust must by its terms be continued indefinitely under the administration of her appointees, or in the absence of an appointment by her, of a successor named by the Court to prevent a failure of the trust. *Callis vs. Ridout*, 7 *G. & J.*, 1. The appointment *might* be made to some one yet unborn who might live to administer this trust not only for twenty-one years, but for fifty years, should the infant appellant, or his issue survive so long. Indeed, if the trust be valid at all, nothing but a failure of the issue of the first taker, which may not happen for five hundred years, can terminate it.

The word "issue" as here used, would certainly include grand-children born after the testator's death.

There is no period fixed for the ultimate vesting in possession of the fee, should the issue of the testator's daughter survive the appellee, placing the most restricted construction upon the word "issue," but the trust is to be continued indefinitely for the benefit of *all* of the testator's present and future grand-children. *A fortiori*, if the word "issue" here includes great-grand-children and descendants generally. In which case, it may be well to observe, moreover, that the devise is in conflict with the universal rule, that a limitation to the issue of an unborn person is under all circumstances void, if he is to take as purchaser. 2 *Wash. R. P.*, 372. Even by way of remainder after an estate tail. *Williams' R. P.*, 50.

If the trust is void at all by reason of its conflict with the rule against perpetuities, it is void *in toto et ab initio*, and the whole item or clause in which it is contained falls with it, as well as the power in the 3d item to sell,

lease, &c., the property given in trust. *Williams on R. P.*, 305, (*4th ed.*,) note 2.

How can a limitation over, limited to take effect only at the regular determination of a previous estate upon which it is founded, be effectual if the previous estate has never vested and never can vest at all? Moreover, it is clear that the limitations over in this case are based upon the assumption that the devisees of the previous estate are capable of taking. When the foundation is removed it is reasonable to expect the superstructure to fall. It must be borne in mind that this is not the case of an "alternative devise" limited to take effect if for any reason the previous estate fails to vest, but, a devise to take effect, if having vested, the previous estate should determine within the perpetuity period. It is a residuum, a remainder to be enjoyed *after*, and only after, the previous devisees have all enjoyed it; and being dead can be no longer benefited by it. We are aware that the doctrine of acceleration has been applied to a somewhat similar class of cases, but know of no application of it to a case like this one where the previous estate has failed, not by reason of their being no devisees to take it, but by reason of the gifts being void in consequence of its violating the rule against perpetuities. 2 *Washburn R. P.*, 327 ; *Crompe vs. Barrow*, 4 *Ves.*, 681 ; *Lewis on Perpetuities*, 190 (*top*) ; 2 *Jarman on Wills*, 359.

But even should the Court adopt the theory of the appellee, and hold the limitations over to be a valid limitation by way of executory devise, notwithstanding the failure of the trust, the appellant, R. H. Goldsborough, would be entitled to the relief prayed, for in that view his deceased wife must have taken an estate of inheritance, a determinable fee as heir-at-law. *Wigram & O'Hara on Wills*, 143 ; 1 *Wash. R. P.*, 131, 132 ; 2 *Wash. R. P.*, 372.

In no view of the case can the appellee claim a right of possession and present enjoyment by virtue of the limita-

tion over to her, whether it be a valid limitation by way of executory devise or not. For an executory devisee has no estate at all, but only a contingent right to an estate in *futuro*, the heir taking the whole fee in the interim, and not a mere term bounded by the probable or when it can be made so, the ascertained continuance of his estate. 2 *Wash. R. P.*, 369; *Williams R. P.*, 260.

If the trust is void, in no view of the case could she have a right to longer retain possession of the trust property, and if it is valid she cannot of course, be injured by a decision sustaining it.

We know of but one other construction which could be given to this devise, which could even technically sustain the limitation over; and that is that the word *"issue"* in the second limitation is to be construed as a word of limitation and not of purchase, and that the first taker took an equitable estate tail with contingent remainder to the appellee expectant on the estate tail thereby raised, to take effect in the event of the failure of issue happening in the life-time of the appellee. *Lewis on Per.*, 227.

But this would confer by operation of law under the Act of 1786, a fee simple in the realty and an absolute estate in the personalty upon the first taker. *Hoxton vs. Archer*, 3 *G. & J.*, 199; *Hatton vs. Weems*, 12 *G. & J.*, 83; *Cooney vs. Woodburn*, 33 *Md.*, 325.

And even before the Act, curtesy was always an incident of estates tail. 1 *Wash. R. P.*, 74.

If these views are right, the trust being void, the wife of R. H. Goldsborough, took a fee as heir-at-law and sole distributee at the testator's death, in and to the property attempted to be devised in perpetuity and upon her demise, intestate, the appellant became entitled to his curtesy in the realty and his marital rights in and to the personalty. Upon the subsequent death of his infant daughter he became further entitled to her reversionary interest in the personal estate of her mother. (Code Art. 93, sec., 127)

and her brother, the infant appellant, to her reversionary interest in the realty.

*Philip F. Thomas* and *I. Nevett Steele,* for the appellee.

The first inquiry which presents itself in the construction of this will, is in reference to the devise in trust for the use and benefit of Mrs. Goldsborough, during her life. This is clearly a valid devise.

When there is a devise in trust for a class or for classes of persons, and some of these entitled under the language of the devise may not come into being, or be entitled within the time fixed by the perpetuity rule, the trust is void, and those who do come into being within the lawful time, cannot have it sustained either in whole or in part for their benefit. The Courts cannot say under such circumstances, what share or shares, if any, the testator would have given them. But even in these cases of devises to a class, if any of those becoming entitled within the proper time are designated and described independently of those who may come into being thereafter, they are permitted to take, in spite of their association with others, as to whom the devise is void. But Mrs. Goldsborough was not one of a class, and this rule had no application to the trust in her favor. The trusts for the issue were as to her *successive* and not joint. We are not aware that it has ever been held, that in the case of successive devises to different persons, of either legal or equitable estates, those devises which were good under the perpetuity rule, should be destroyed by the vice of a subsequent devise which transgressed the limitations of that rule. As for example that a devise of a life estate perfectly good in itself, should be made bad, by a subsequent devise of the remainder to other persons, which in its provisions infringed the perpetuity rule. In cases of devises to a class, counsel for the devises have frequently sought to establish that the devises were successive, and Courts have refused

to strain the language of the testator, for the purpose of maintaining that construction and holding the devise valid. If this point be right, it follows that R. H. Goldsborough, is not entitled as tenant by the curtesy, and has no marital rights in the premises. *Supplement to Lewis on Perpetuities*, 66 *Law Library*, 114 *top*, 160 *marg; Deford vs. Deford*, 36 *Md.*, 178 ; *Humberston vs. Humberston*, 1 *P. Williams*, 332 ; *Blagrove vs. Hancock*, 16 *Simons*, 324 ; *Ware vs. Richardson*, 3 *Md.*, 505 ; *Perry on Trusts*, sec. 387.

The next inquiry is, as to the validity of the devises subsequent to Mrs. Goldsborough's life estate. These are alternative. First if she "shall die without leaving issue," the property is given absolutely to the testator's wife. This, under the Act of 1862, chap. 161, and indeed by the fair construction of the whole clause of the will itself, meant a failure of issue at Mrs. Goldsborough's death, and not an indefinite failure, and was therefore a valid testamentary disposition of the property. But Mrs. Goldsborough did leave issue, and consequently the second alternative provision became operative and took effect. This is dependent on the contingency of survivorship, as between the issue of Mrs. Goldsborough and Mrs. Martin. Manifestly, this is a good executory devise to Mrs. Martin. The contingency upon which it depends must happen, if at all, within a life in being, that is her own life, and the estate, if the contingency of her survivorship should happen, must therefore vest within the time permitted by the law. Until the decision of this contingency by the actual event, which must happen within a life in being, the trust estate for the issue is good, and does not contravene the perpetuity rule. It cannot be said here, that the trust may by possibility, be continued too long, and is therefore void, because the limitation is alternative, and by one of the alternative limitations, the trust must end within a life in being. We understand the law to be,

that in the case of alternative limitations, sometimes called limitations with a double aspect, one of which is good, and the other bad under the rule against perpetuities, the Courts will act according to the actual events, and if the good limitation may and subsequently does take effect, will maintain and enforce it. Upon principle, this is just and reasonable, and does not in any way impair the efficiency of the perpetuity rule, and is we think fully supported by the adjudged cases. *Lewis on Perpetuities,* 52 *Law Library,* 333 *top,* 501 *marg., et seq.;* 2 *Redfield on Wills,* 850, 851 ; *Perry on Trusts, sec.* 385 ; *Longhead vs. Phelps,* 2 *Wm. Blackstone,* 704 ; *Leake vs. Robinson,* 2 *Mer.,* 363 ; *Goring vs. Howard,* 16 *Simons,* 395 ; *Monypenny vs. Dering,* 2 *DeG. M. & G.,* 145 ; *Cambridge vs. Rous,* 25 *Beaven,* 409 ; *Monypenny vs. Dering,* 7 *Hare,* 597-9 ; *Jarman on Wills,* 246, 247.

If the preceding views are right, what propriety is there in calling upon the Court now to pronounce upon, and declare the invalidity of an alternative limitation, when the events have not yet occurred upon which alone that limitation can take effect? Why decide a question of law, when the facts upon which alone it can arise, do not yet, and may never exist?

If the question of the validity of the trust for the issue of Mrs. Goldsborough, is to be now decided, as if the issue had survived Mrs. Martin, we contend that the devise to the issue is valid, and ought not to be set aside.

The trust as originally created, was for Mrs. Goldsborough during her life.

The will goes on to give directions for certain active discretionary duties on the part of the trustee, which affect the mode of Mrs. Goldsborough's enjoyment of the estate, and prevent the legal estate from devolving upon her. These were clearly lawful as to her, a married woman, for her life, and would be enforced for her protection. The will provides that on her death, the trust " shall extend

to, and be executed for said *issue* in the same manner as directed for, and on behalf of my daughter.'' This gives to the trustee one-half the estate for the use and benefit of the issue, and standing alone would give the issue the absolute fee simple estate. But the directions to the trustee, affecting the mode of the enjoyment of the estate are continued with the trust, and if those directions may by possibility have the effect of putting the trust property *extra commercium* for a longer period than the law allows, the question is presented, whether the estate devised is thereby avoided, or whether the provisions as to the mode of enjoyment of the estate, which infringe upon the perpetuity rule, are not themselves alone made void by the operation of the rule.

The powers conferred, and the active duties imposed on the trustee, do not interfere with the vesting of the equitable title, but they prevent the legal estate from being devolved upon the issue, and shut them out from actual possession and control of the property. Now if these powers and duties are correctly assumed to place the trust property *extra commercium*, and to be capable under the will of continuance beyond the permitted period, the legal result is that they are invalid and void. All provisions which by way of trust or power, (and the two are scarcely distinguishable) create or may create a perpetuity, are void, but the estates in respect of which they are to be exercised are not thereby invalidated.

It is believed that no case can be found in which the gift of a legal or equitable estate has been held to be void, because the donor attempted to annex to the gift invalid or illegal incidents in reference to the mode of its enjoyment. See *Lewis on Perpetuities, chap.* 25, and cases there cited.

In truth these directions of the testator are in the nature of conditions subsequent, which if they be impossible, illegal or repugnant to the estate are so far a nullity, and leaves the estate absolute and unconditional. 2 *Redfield on Wills*, 664.

The direction, not the estate was void. So when there is a devise or bequest, with directions for accumulation, extending beyond the period allowed, the directions will be void, but the bequest good. The same rule is applied where there is a trust to raise money out of an estate, and the trust on which the money is limited is too remote ; the latter trust only being avoided.

Where there are in the same will, and in reference to the same property, different trusts and provisions, some valid and others not, those which are valid will be maintained, unless they are so dependent on or intermingled with the others, that they cannot be maintained without defeating the *general intent* of the testator. Here the general intent was clearly to provide for the issue of Mrs. Goldsborough, by giving them this property. The desire to give Mrs. Martin the control of it, was secondary and incidental, and may be disappointed, without defeating the general intent. *Atty. Gen. vs. Greenbill,* 9 *Jurist, N. S.,* 1307 ; *Snowdon vs. Dales,* 6 *Simons,* 524 ; *Green vs. Spicer,* 1 *Russ. & M.,* 395 ; *Graves vs. Dolphin,* 1 *Simons,* 66 ; *Brandon vs. Robinson,* 18 *Vesey,* 429 ; *Holmes vs. Godson,* 35 *E. L. & E. Rep.,* 591 ; *Hood vs. Oglander,* 34 *Beavan,* 513 ; *In re Sanderson's Trust,* 3 *Kay & J.,* 503 ; *Perry on Trusts, secs.* 395–376–508 ; 2 *Redfield on Wills,* 822–3 and 842–3 ; *Williams vs. Williams,* 4 *Selden,* 538 ; *Dodge vs. Pond,* 23 *N. Y.,* 69 ; *Kilpatrick vs. Johnson,* 15 *New York,* 322, 324.

The trust as created was to Mrs. Martin, the wife of the testator, confiding to her wide discretionary powers, and evidently founded on special and personal confidence in her affection for the *cestui que trust,* and her good judgment. Such discretionary trusts founded on personal confidence in the trustee, can only be executed by the trustee named and cease upon his death. They cannot and will not be executed by Courts of Equity, through trustees of their appointment. If then, Mrs. Martin had not the power to

name a successor, the active discretionary trusts which prevent the legal estate from devolving on the *cestui que trust*, would cease upon her death, and the trust would be only a trust for a life in being. But the will provides that she may appoint a successor, and thus the trust may be continued too long. The will does not say for what period she shall appoint a successor, and if she should appoint one to act during the period of twenty-one years from Mrs. Goldsborough's death, it is believed that the appointment would be valid, and would be maintained by the Courts.

But if the power to name a successor, as given by the will, is prohibited and wholly invalid, then the perpetuity rule is fully gratified by holding it to be void, without setting aside the whole devise.

This rule, wise and sound as it is, would become unreasonable and intolerable, if devisees could by its enforcement, be stripped of their estate, because of some incident annexed to it, which the rule did not permit. The ends of the rule are fully attained, by holding that to be void, which only could create a perpetuity. *Perry on Trusts, sec.* 510, and cases there cited; *Hill on Trustees,* 211, 226, and 486 marginal, and cases cited: *Cole vs. Wade,* 16 *Vesey,* 44; *Barnum vs. Barnum,* 26 *Md.,* 172.

MILLER, J., delivered the opinion of the Court.

James L. Martin, died in October, 1872, seized and possessed of valuable real and personal estate, and leaving a will by which he devised one-half of his property to his wife, and as to the other half as follows:

"*Item.*—I give, devise and bequeath unto my dear wife, Ellen F. Martin, the other half of my estate, real, personal and mixed, in special trust and confidence, that she will hold the same for the use and benefit of my dear daughter Henrietta M. F. Goldsborough, and I direct that the same shall be invested in safe and productive stocks or securities, or on real estate, and the rents, issues and profits arising

from the same, to collect and receive, and to pay over the same to my said daughter, or use the same in her support and maintenance, as in her discretion she may deem best for the interest and advantage of my said daughter. And I direct and will, that the said trustee may, in her discretion, use the whole income in the support of my said daughter, if she deems the same necessary for her comfort and support, but should there remain at any time a surplus, the same shall be invested for the use of my said daughter, which surplus so invested, may be used at any time for my daughter's comfort or necessities. And in case my said daughter Hennie shall die without leaving issue, then I give, devise and bequeath the whole of the estate hereby given in trust, to my dear wife, in fee simple. And in case my said daughter shall die leaving issue, the trust hereby created shall extend to and be executed for said issue in the same manner as directed for and on behalf of my said daughter. And in case such issue shall die in the life-time of my said wife, then I give the whole trust property to my said wife in fee simple. And I do further direct and will, that my said wife may, in her discretion, pay over to or use, for the use of my said daughter, any part of the trust property given to her, and the receipt or release of my said daughter shall be a full discharge to my said wife for the same. And I do order, direct and will that my said wife may, by will or other instrument of writing, designate and name a proper and suitable person to succeed her in said trust, unless the property shall have become hers by the happening of the contingency above mentioned. And I do further order and direct, that my said wife, Ellen F. Martin, shall not be held liable for any loss that may arise from any investment of property hereby directed.''

'' *Item.*—I do hereby authorize and empower my wife to sell and dispose of the whole, or any part of my real estate, in her discretion, at either public or private sale,

and the proceeds arising therefrom to dispose of as hereinbefore directed.''

The *testator* left surviving him his widow and his daughter, Mrs. Goldsborough, who was his sole heir at law, and the wife of the appellant, Richard H. Goldsborough. In December, 1872, Mrs. Goldsborough died intestate, leaving surviving her, her said husband, and an infant son, (the other appellant,) who was born in March, 1871, during the life of the testator, and an infant daughter, who was born in November, 1872, after the testator's death, and died in October, 1873. In November, 1873, the bill in this case was filed by the surviving husband in his own right, and by her infant son by his said father as next friend, against Mrs. Martin, the widow and trustee named in the will, insisting that the above devise created a perpetuity and was void in all its parts, and hence there was an intestacy with respect to the property so attempted to be devised, and the same descended to Mrs. Goldsborough as heir at law, and distributee of the testator, and, upon her death and that of her infant daughter, the same vested in her son, the infant complainant, subject to the life estate of her surviving husband therein. The bill then prays for a partition, or a sale for the purpose of partition, of the real estate, and an account of the rents and profits thereof, and for general relief. Mrs. Martin, in her answer, after admitting the other averments of the bill, denies that the trusts thereby created are void, as tending to create a perpetuity, and insists they are good and valid testamentary dispositions of the property to which they refer; and she further insists that there is, in that portion of the will, a valid limitation of said property to herself, by way of executory devise in case the issue of Mrs. Goldsborough should die in the life-time of respondent, and that the Court will not entertain and decide, for the purposes of partition or sale, the questions presented by the bill, while it is yet uncertain whether this devise to her may not take

effect. A *pro forma* decree was then passed on bill and answer, dismissing the bill, and from that decree this appeal is prosecuted.

The rule against perpetuities is one of the established landmarks of the law. It was considered and applied by this Court in the case of *Barnum's will*, 26 *Md.*, 119, and in the more recent case of *Deford's will*, 36 *Md.*, 168; and it makes no difference in its application, whether the estate be limited by way of legal settlement or under cover of a trust. As was held in *Barnum's Case*, if the trusts require in their execution, a longer period than that prescribed by the rule, viz: a life or lives in being at the time of its commencement, and twenty-one years, and a fraction of a year to cover the period of gestation, thereafter, and the property devised to the trustees is thereby rendered inalienable for such longer period, the law denounces the devise in trust as a perpetuity and declares it void. That the clause of the will now before us, which extends the trust for the benefit of "*the issue*" of the testator's daughter, Mrs. Goldsborough, offends the rule, does not, we think, admit of reasonable doubt. The term "issue" is here used without restriction, and embraces all the lineal descendants of the daughter. Power is given the trustee to appoint some one to succeed her in the trust, after her death, and this of itself, would render possible the continuance of the trust far beyond the prescribed limit. But besides this, if the trust were valid and the testator's intention could be carried into effect, a Court of Equity would be bound to supply a trustee to execute the trust so long as descendants of the daughter might come into existence and become *cestuis que trust* under it, and thus it might endure to remote generations. Beyond question, the rule forbids this, and it seems to us plain, that this clause is just as objectionable as either of those pronounced void in the cases referred to.

The next question is, does the striking down of this clause for the benefit of the issue invalidate the previous

trust for the benefit of the daughter? In our judgment it does not. It is a gift to the daughter, a named individual, *in esse* when the will was made and took effect, followed by a gift upon her death to a class. We have been referred to no authority, and have found none, which would justify us in holding the former gift invalid because the latter violates the perpetuity rule. On the contrary, it seems to be well settled, that where successive estates are created, and the first in order of succession is not void for remoteness, it is good, although the subsequent estates should be void for that reason. This was conceded in the opinions in the case of *Lord Dungannon vs. Smith,* 12 *Clark & Finnelly,* 546, and is stated as a recognized doctrine by *Lewis on Perpetuities in* 66 *Law Lib.,* 160. The clauses set aside in the wills of *Barnum* and *Deford,* were gifts to or in favor of a class, and the authorities show that even in such cases it has been earnestly contended that where some of the class are *in esse* and capable of taking without violating the rule, the gifts, as to such parties should be held good, but the Courts have never countenanced this doctrine. The distinction and the reasons for it have been very clearly stated by Sir WM. GRANT in the leading case of *Leake vs. Robinson,* 2 *Merivale,* 390. "To induce the Court," (says the Master of the Rolls,) "to hold the bequests in this will to be partially good, the case has been argued as if they have been made to some *individuals* who are, and to some who are not, capable of taking. But the bequests in question are not made to individuals, but to classes; and what I have to determine is whether the class can take. I must make a new will for the testator, if I split into portions his general bequest to the class, and say that because the rule of law forbids his intention from operating in favor of the whole class, I will make his bequests what he never intended them to be, viz: a series of particular legacies to particular individuals, or what he had as little in his contemplation, distinct bequests in each instance to two differ-

ent classes, namely, to grandchildren living at his death, and to grandchildren born after his death."

It has also been argued that the daughter, Mrs. Goldsborough, took an estate tail (convertible under our statutes into a fee,) by implication, under the devise to her, followed by the gift over "in case she shall die without leaving issue." But by our Act of 1862, ch. 161, we are required to read the terms, "die without leaving issue," as here used and from which the implication is supposed to arise, as importing a failure of issue at the time of the death of the daughter, and not an indefinite failure of issue. This, in our judgment prevents the implication contended for. We are also further of opinion, after the best consideration we have been able to bestow upon the subject, that the rule in *Shelley's Case* does not apply to this will, and that Mrs. Goldsborough took only an equitable life estate in the property thus devised in trust.

The remaining question is, what becomes of the other clause, "And in case such issue shall die in the life-time of my said wife, then I give the whole trust property to my said wife in fee simple?" This devise is not void for remoteness, because it is clear the contingency upon which the limitation over is to take effect, must happen, if at all, within the allowed limit of time. The difficulty in sustaining it arises from the invalidity of the previous clause extending the trust for the benefit of the issue, but we think it may be upheld upon the authority of the case of *Monypenny vs. Dering*, 2 *De G. McN. & G.*, 145, decided by Sir Edward Sugden. In that case the testator devised an estate in trust for his brother *Phillips Monypenny* for life, and after his death in trust for the first son of said *Phillips* for life, and after his death in trust for the first son of such first son, and the heirs male of his body, and in default of such issue, in trust for every other son of said *Phillips* successively, and in default of issue of the body of his said brother Phillips, *or in case of his not having any at his*

*decease,* in trust for his brother *Thomas Monypenny* for life, and after his death in trust for *Thomas G. Monypenny,* the eldest son of *Thomas,* for life, and after his death in trust for the first son of the said *Thomas G.,* and the heirs male of his body, and in default of issue of the body of said *Thomas G.,* in trust for every other son of his said brother *Thomas* successively, and on failure of all such issue of the body of his said brother *Thomas* then in trust for him, his heirs and assigns forever.    Thomas Monypenny died before the testator, leaving surviving him his son Thomas G. Monypenny, who, with his uncle Phillips, also survived the testator.   Phillips never had any children and died. The question then arose, who was entitled to the estate, and the Chancellor held, 1st. That Phillips took an estate for life with remainder to his first unborn son, if such son had been born, *and that all the remainders over were void for remoteness.*   2nd. That effect was to be given to the clause containing the gift over to Thomas and his sons, as an independent clause, *and that such gift was perfectly valid.*    There the contingency upon which the gift over was to take effect, viz: failure of issue of Phillips at his death, had happened, and the gift was sustained, notwithstanding the previous gifts to the unborn sons were declared invalid.    If then the contingency upon which the gift over in the clause before us is to take effect, viz: death of the issue of the daughter in the life-time of Mrs. Martin, had happened, and the latter were now claiming the property, in that event, we do not see how her claim could be resisted.    This being so, we find no difficulty in holding that the trust may continue during the life of Mrs. Martin to await the contingency thus provided for, and we therefore so determine.

Under this construction which we have given to this will, after a careful consideration of the very able arguments at bar, and a patient examination of all the authorities referred to and many others, it is plain the

Goldsborough, *et al. vs.* Martin.

complainants cannot sustain their bill, and the decree appealed from must be affirmed.

The only other view to be taken of the clause last considered, is to treat it as a good executory devise, requiring no antecedent estate to support it. In that event, the title to the real estate would devolve upon the heirs at law of the testator, subject to be divested upon the happening of the contingency, and the personal property upon the executor to be disposed of by the Orphans' Court, or a Court of Equity as provided in Art. 93, sec. 10 of the Code. If that be the true construction of the clause, it is clear the surviving husband of Mrs. Goldsborough would have no interest in the property, real or personal, and there could be no partition of the real estate or sale of it for that purpose. The only sale that could possibly be made would be a sale for the purpose of investing the proceeds under the Act of 1862, ch. 156, and whether the provisions of that Act apply to a case where the title is thus held, may be a matter of grave doubt. At all events no such relief could be granted the infant complainant under this bill. To obtain it would require the filing of a new bill with special reference to the provisions of that statute. But upon this point, no opinion is expressed, because we are quite satisfied to rest our decision of the case upon the construction of the will before stated, and to allow the trust to continue during the life of Mrs. Martin.

*Decree affirmed.*

(Decided 5th March, 1875.)