Elizabeth H. Collins and Richard Bernard, Administrators c. t. a. of John Eschbach *vs.* Daniel J. Foley, Trustee.

*Power to Lease conferred by Will—Intention of Testatrix—Lease for Ninety-nine years—Rule against Perpetuities—Restraint of Alienation.*

Where a testatrix gave by her will to a trustee named therein, full power and authority to make and execute any and all leases whatsoever, of any and all portions of the rest and residue of her estate, which he might deem advantageous and proper, power is conferred to make leases of unimproved ground in the City of Baltimore, according to the prevailing system of tenure in said city, for ninety-nine years, renewable forever, such being the clear intention of the testatrix.

When the power of leasing is limited to a person *in esse*, or several of such persons, and the survivors and survivor of them, and is not extended to their representatives, it does not infringe the rule against perpetuities.

The power to lease, conferred by a testatrix, being limited to the trustee named in the will, and not extended to his heirs, representatives, or successors, does not transgress the perpetuity boundary.

Where property is devised in trust, the trustee and his representatives to hold the same for the use and benefit of the son of the testatrix, during his life, and after his decease for the use and benefit of his children, a power conferred upon the trustee, by name, to lease the property so devised, is not invalid as being in restraint of alienation by the children.

Appeal from the Circuit Court of Baltimore City.

This case and the one immediately following, were before this Court on a former occasion, and are reported in 61 *Md.*, 381. They were remanded under section 28 of Article 5, of the Code, without affirming or reversing the decrees appealed from, that the · same might be

amended, and the causes proceeded with according to the usual practice of the Court. Having gone back to the Circuit Court for its action, in accordance with the opinion of this Court, the Circuit Court, (DUFFY, J.,) decreed in this case, that the agreement to lease, signed by Nicholas Popplein and John Eschbach, under date of the 10th of March, 1876, should be reformed by the insertion of the words, "for the term of ninety-nine years, renewable forever," after the word "lease" in the first line of said agreement. And it was further adjudged, that the complainant was entitled to have the agreement as thus reformed, specifically performed; and the defendants were directed to accept and join in the execution and acknowledgment of a lease, to be duly executed and acknowledged and tendered to them by the complainant, of the property named in the proceedings. The said lease to be for the term of ninety-nine years, from the 1st of June, 1876. From this decree the present appeal was taken. The case is further stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, and BRYAN, J.

*Francis P. Stevens, Richard Bernard,* and *Arthur W. Machen,* for the appellants.

*S. Teackle Wallis, Jr.,* and *S. Teackle Wallis,* for the appellee.

MILLER, J., delivered the opinion of the Court.

The question whether the lessees will take a good title under the lease which the decree appealed from in this case requires them to accept, depends upon certain clauses in the will, and codicil thereto, of Mrs. Emily MacTavish, which was admitted to probate in February, 1867.

By this will the testatrix devised all the rest and residue of her estate to her friend, "Daniel J. Foley, his heirs, executors and administrators in trust," in the first place to pay an annuity and a certain sum of money to her grandson, Francis Osborn MacTavish, and then "all the remainder of my estate of all sorts it is my will, and I hereby direct that my said trustee, Daniel J. Foley and his representatives as aforesaid, shall take and hold to and for the use and benefit of my son, Charles Carroll MacTavish, for and during his life only, so that he shall have and enjoy the same, and the rents, issues and profits thereof without impeachment of waste; and from and immediately after his decease then to and for the use and benefit of all and every the children and child of my said son, Charles Carroll MacTavish, and their descendants (to take per *stirpes*) who shall be living at his death, their heirs, executors, administrators and assigns forever, the shares of such children and descendants who shall be females, to be, and they are hereby devised to, their sole and separate use respectively, to the same effect and with the same powers of disposition by deed or will in regard thereto as if they were *fêmes sole*, free from all control of any husband they may respectively marry, and from all responsibility whatsoever for such husbands, their debts or engagements." And then immediately following is this clause: "I hereby authorize and empower the said trustee, with the consent of my son, Charles Carroll MacTavish, during the life of the latter, and subject to the approbation of the Orphans' Court of Baltimore City after the death of my said son, to make such changes of investments of the rest and residue of my said property, and such re-investments and changes from time to time as may in the judgment of said trustee be proper and advantageous, for the which end I hereby authorize and empower my said trustee to do all lawful acts, and execute and deliver all needful deeds and instruments of writing in the premises, with the consent and

authority aforesaid, *full power to lease being included herein.*" By a codicil to this will she makes provision that in case all the children of her said son should die before reaching the age of twenty-one and without lawful issue of any of them living at the death of the survivor of them, then, at the death of such survivor and of her said son, all the property devised to Daniel J. Foley in trust as aforesaid shall pass to her friend, the Reverend Thomas Foley, in fee, and to this provision she adds the following clause: "Lest there be any misunderstanding as to the powers of my said trustee, Daniel J. Foley, as to the leasing of the property by my said last will and this codicil devised to him in trust, I hereby declare it to be my intention, that with the consent and approbation in my said will prescribed and provided, he shall have full power and authority to make and execute *any and all leases whatsoever*, of any and all portions of the rest and residue of my estate which *he may deem advantageous and proper.*"

Powers of leasing are very common in English settlements and wills. In that country every well-prepared settlement and will of real estate, unless its value be inconsiderable, or the circumstances of the case do not require it, contains a power of leasing, and, as was said by Lord MANSFIELD in *Taylor vs. Horde, et al.*, 1 *Burr.*, 120, "of all kinds of powers, this is the most frequent." The general rule of interpretation which prevails here, as in all similar cases, is that such powers must be construed according to the intention of the parties, and as Lord KENYON said in *Pomery vs. Partington*, 3 *Term Rep.*, 674, if Judges, in construing the particular words of different powers, have appeared to make contradictory decisions at different times, it is not that they have denied the general rule, but because some of them have erred in the application of the general rule to the particular case before them. 1 *Platt on Leases*, 394, 398.

Applying  this rule to the will before us, there seems to be no room for error or doubt.    The testatrix was possessed of farming lands in the country, and of vacant, unimproved lots in the  City of Baltimore.    The only mode by which  the  trustee, under the powers given him, could make the latter (without selling  them) productive of income, was to lease them, according to the  prevailing  system of tenure in  that  city, under leases for ninety-nine years, renewable  forever ; and when she gave him the power to make " all leases whatsoever of any and all portions " of the residue of her estate which he might  deem advantageous and proper, it is perfectly clear she intended he should have the power to make such  leases of her unimproved city lots, and that, too, whether they were made for the purpose of changing investments or not.

But the validity of the power has been assailed, and, it is said, in the first place, that it infringes the rule against perpetuities.    Without doubt, a leasing power may be so framed as to transgress this rule.    Such was the character of  the power in *Barnum's Case,* 26  *Md.,*  119, where the power given by the will to the trustees and their *heirs and successors* to make leases, was by  *express  terms* extended beyond the limits prescribed by the rule.    But *Mr. Lewis* in his admirable treatise on the *Law of Perpetuity,* in considering the rule as it affects  the  limitation and  exercise of powers of sale,  exchange,  partition, leasing, and the like, makes, among others, this deduction from the authorities, viz., that there can be no objection on the ground of remoteness to such  unconfined powers, when limited to a person *in esse,* or  several of such persons, and the survivors and survivor of them, and *not extended to their representatives.*    In such case they resemble a springing use or executory devise, to arise within the  compass of a life in being, and like these executory limitations, they in  no degree transgress  the perpetuity boundary.    *Lewis on Law of Perpetuity,* 554.    And such, according  to our in-

terpretation of it, is the limitation of the power in this case. If there is any provision in the *will* indicating that it was the intention of the testatrix that this particular power should devolve on any successor of Mr. Foley in the trust, that provision is superseded by the *codicil* in which the leasing power is given to him *nominatim*, "my said trustee, Daniel J. Foley," and is not extended to his heirs, representatives or successors; so that the power continues during his life and no longer. But if we are in error in extending it thus far, the least limit of continuance that can reasonably be assigned to it is during the life of the son, and after his death during the minority of all his children in case he should die before they all attained the age of twenty-one years. The will and codicil both require the leases to be made with the "*consent*" of the son during his life, and "subject to the *approbation* of the Orphans' Court," after his death; and by requiring the approval of this Court it may perhaps be reasonably inferred that it was her intention that the power should continue so long only as any of these children should be subject in any wise to the control of that tribunal. But whether we take the one limitation or the other makes no difference in this case, because either will cover the time at which the contract for the lease in controversy was executed.

But it is also argued that this leasing power is repugnant to the estates created by the will, and therefore void. It is admitted that Charles Carroll MacTavish, the son of the testatrix, died in March, 1868, leaving four children, all of whom are now living. The eldest of these children (a daughter) attained the age of twenty-one in June, 1875, and this event put an end to the executory limitation in favor of the Rev. Thomas Foley. Counsel for the appellants argue that these children took under the will a remainder in fee freed from the trust, and that any limitation or restriction upon their absolute power over it, such

as a power of leasing in another, is repugnant to the nature of such an estate and void.   If they are right in this, then it is clear that the leasing power is stricken down altogether, for there is no more reason for construing the will as creating a trust over the life estate than there is over the estate in remainder.   In order to sustain their position, the will must be read as making a direct devise to the son for life, with remainder in fee to his children, and attaching to the estates so created this leasing power in another.   If, instead of this leasing power, there were annexed to such estates a condition against alienation, even for a limited time, the authorities cited by counsel would be applicable.   In the case of *Mandlebaum vs. McDonell*, 29 *Mich.*, 76, where the question is elaborately discussed by Judge CHRISTIANCY, the will created a life estate, with remainder in fee to certain named devisees, and imposed the condition that the property should not be sold until the youngest of the devisees attained the age of twenty-five years, and the Court held the restriction void, and that a restriction which would suspend all power of alienation of such an estate, even for a *single day*, is inconsistent with the estate granted, unreasonable and void. This was followed by the recent English case of *Rasher vs. Rasher (Law Rep.*, 26, *Ch. Div.*, 801,) where a testator devised an estate in fee to his son, provided that if he wished to sell it during the life of the testator's wife, she should have the option to purchase it at a sum which was about one-third of its market value, and it was held that this proviso amounted to an absolute restraint on alienation during the life of the testator's widow, and was void in law.

But neither of these cases is the one before us.   Judge CHRISTIANCY, in discussing the question in his case, is careful to point out in the first place what it does not involve, and says: "It does not involve the question whether a restraint upon the sale of this property for an equal length

of time might not have been rendered legally effective by the conveyance of the legal title to trustees in trust for the benefit of these devisees according to instructions as to the time of sale which might have been inserted in the will, in which case the validity of the restriction as to time would depend mainly upon the question whether the period exceeded that allowed by the rule against perpetuities." In the case before us there is just such a devise in trust. The testatrix devises the residue of her property to a trustee and his *heirs*, executors and administrators *in trust* to accomplish, in the first place, a specified purpose, and then directs that the trustee " *and his representatives* " *shall hold* the remainder of it for the *use and benefit* of her son during his life, and after his death for the *use and benefit* of his children ; and she then gives to this trustee a leasing power which, as we have shown, does not offend the rule against perpetuities. This is quite different from clogging a direct devise in fee, with a restriction upon alienation. In fact, one of the principal purposes of interposing the trust seems to have been to enable the testatrix to confer upon the trustee this leasing power, and we think it may be safely affirmed that in all the range of authorities no case can be found in which the validity of such a power, thus conferred and thus limited, has been questioned. Such powers are not only reasonable, but are sometimes necessary. Especially in a case like this where the estate disposed of consists largely of property, the income from which must consist of rent reserved under leases, and where infants are the beneficiaries. At all events the testatrix had the right to dispose of her property as she pleased, and this disposition of it does not, in our opinion, violate any established rule of real estate law.

The objection that the approval of the Orphans' Court has not been produced, although alleged to have been procured on the 15th of March, 1876, is answered by the fact that the decree from which they appeal requires the

complainant, before tendering to the appellants the lease to be executed by them, to procure the approval thereof by the Orphans' Court of Baltimore City as provided by the will of Emily MacTavish.

Having taken this view of the case, it becomes unnecessary to determine whether, under the proper construction of sec. 28, Art. 5 of the Code, and the terms of the decree or order of this Court remanding the case under that section, when it was before us on the former appeal, it was competent for the appellants to raise the questions which we have thus considered and decided.

> *Decree affirmed, and*
> *cause remanded.*

(Decided 12th February, 1885.)