JOSEPH PULITZER vs. LOUISA BOWLER LIVINGSTON.

Hancock.    Opinion December 2, 1896.

*Perpetuities.    Trust.*

The rule against perpetuities was established to prevent the creation of estates which are to vest, or come into being, upon a remote contingency, and where the vesting of an estate or interest is thereby unlawfully postponed beyond ` the period of a life or lives in being and twenty-one years and nine months thereafter.

Nothing is denounced as a perpetuity that does not transgress this rule.

It is equally applicable to equitable as to legal estates or interests,—to instruments executing powers, as well as to other instruments.

The rule against perpetuities is independent and distinct from that of a restraint upon alienation, although their object is the same,—the prevention of property being taken out of commerce, and locked up, or so held that it cannot be conveyed.

It concerns itself only with the vesting, the commencing of estates, and not at all with their termination.

A perpetuity, therefore, is a future limitation, whether executory or by way of remainder, and of either real or personal property, which is not to vest until after the expiration of, or will not necessarily vest within, the period fixed and prescribed by law for the creation of future estates and interests, and which is not destructible by the persons for the time being entitled to the property subject to the future limitation, except with the concurrence of the individual interested under that limitation.

An estate or interest that is vested, is not subject to, and cannot offend against the rule.

The same is true of future estates or interests that are destructible at the will and pleasure of the owners of the property.

In this case all interests, legal and equitable, were vested.

Moreover, the powers contained in the trust deeds clearly provide for a complete revocation of the trusts at any time, and thereby remove the case from the rule against perpetuities.

If an unlimited indestructible power exists, suspended indefinitely over the fee, it does restrain free alienation by the one who, subject to that power, is the owner of the fee; but the present case is not obnoxious to such a power. It is subject to be barred or destroyed at the will of the cestuis que trustent, or any one of them.

*Slade* v. *Patten*, 68 Maine, 380, overruled.

AGREED STATEMENT,

` This was an action of covenant broken, submitted to the law court on an agreed statement of facts which are found in the opinion.

*A. W. King*, for plaintiff.

*H. E. Hamlin and L. B. Deasy*, for defendant.

*R. C. Dale*, of the Philadelphia bar, also filed a brief for defendant.

SITTING: PETERS, C. J., WALTON, FOSTER, HASKELL, WISWELL, STROUT, JJ.

FOSTER, J.   More than forty years ago certain persons residing in England and France were the owners in fee of large tracts of real estate in America, particularly in the states of Maine, New York, Pennsylvania, and the District of Columbia.   These estates had formerly been the property of their ancestors, William Bingham, of Philadelphia, and from whom the title descended, the "Bingham Estate," so-called, embracing two million two hundred thousand acres in the state of Maine alone.   These large landed estates were principally wild and unimproved, and required the management in this country of representatives of the owners.

Considering the large and increasing number of persons who jointly owned these estates and the distance of their residence from the same, provisions for the sales and conveyances by letter of attorney were inadequate, because of deaths frequently occurring among those who were the owners, and of the necessity of purchasers inquiring and taking the risk of the correctness of the information as to the continuance of the lives of the parties executing a letter of attorney.

On July 18, 1853, three-fifths undivided of this property were vested in the following named persons: William Bingham Baring, (Lord Ashburton), Henry Bingham Baring, Frances Emily (Baring) Simpson, William Frederick Baring, and Anna Maria Helena (Countess de Noailles), and on that day these persons executed a deed of trust of their undivided three-fifths of the property to Joseph Reed Ingersoll and John Craig Miller, as trustees.

The other two-fifths of the property were vested in William Baring de Lotbiniere Bingham, who on the 12th day of August, 1862, executed a like deed of trust of his undivided two-fifths of the property to the same persons, as trustees.

These owners, for the more convenient management of their property in this country, conveyed it to these trustees by the foregoing deeds, and upon substantially the following trusts, as therein expressed: —

(1)   To let and demise the real estate:   (2)   To invest and keep invested the moneys and personal estate, with power of sale and reinvestment:   (3)   To collect and receive the rents and income of the real estate, and the interest and income of the personal estate:   (4)   To remit the net income to the parties or their legal representatives, according to their respective rights and interests therein, or otherwise to apply and dispose of the same as the parties or their legal representatives should from time to time direct.

The following powers were therein expressly conferred upon the trustees, viz: —To grant, bargain, sell, exchange, and absolutely dispose of in fee simple, or for life, or lives, or for years, or for any other estate, all or any part of the real estate, and to make in due form of law all such deeds and conveyances as might be necessary to carry the sale into effect:   To remit the proceeds of such sales after deducting expenses, to the parties or their legal representatives, according to their respective interests therein, or to otherwise apply and dispose of the same as the parties or their legal representatives should from time to time direct:   To raise by mortgage of the premises or any part thereof, such sum or sums of money as should be requested by the parties, or such of them as might be entitled to any beneficial interest in the premises:   To appoint by deed successors with all the powers of the trustees originally named: and finally it was expressly provided that it should be lawful for the parties respectively, "and their respective legal representatives, at any time or times hereafter, by any writing or writings under their respective hands and seals, and attested by two or more credible witnesses, to alter, change, revoke, annul,

and destroy all and every the trusts hereby created as respects their respective shares and interests in the premises, and to declare, direct, and appoint such other uses and trusts, if any, concerning their respective shares and interests in the said trust estate, or any part thereof, as they shall respectively choose or think proper, anything herein contained to the contrary notwithstanding."

New trustees were from time to time nominated in accordance with the provisions of the deeds in relation to successors to the original trustees, and on September 14, 1882, the then trustees, Charles Willing and Phineas Pemberton Morris, conveyed the particular property involved in this action to May W. Bowler, of Cincinnati, Ohio. On October 4, 1886, May W. Bowler conveyed the same to the defendant, and on May 30, 1894, the defendant conveyed the same by warranty deed, with full covenants, to the plaintiff.

The plaintiff has brought this action for a breach of the defendant's covenant contained in her deed to him that the property is "free of all incumbrances," alleging an outstanding title in fee in those persons who executed the trust deeds, or their heirs or assigns, as a breach of that covenant. And as a part of the same transaction with the deed from defendant to the plaintiff, the defendant executed and delivered to the plaintiff a special covenant that those grantors in the trust deeds, had no right, title or interest in the property that could be maintained in any proceeding in the courts of this state as against the title conveyed by her to the plaintiff, and a breach of this special covenant is also alleged in this action.

The land involved in this action is situated at Bar Harbor, and comprises about fifteen acres with the buildings thereon. The purchase price between the plaintiff and the defendant was $90,000, and since the conveyance over $100,000 more have been expended in improvements.

The rights of the parties depend upon the legal effect to be given to the trust deeds of July 18, 1853 and August 12, 1862, the plaintiff claiming that these deeds are not legally sufficient to divest the grantors of their title in the property; that there were

future estates and interests so limited therein that they offend against those rules of law which prescribe and limit the period within which future estates and interests must necessarily vest; and that these deeds being void no title ever passed to the trustees but still remains in the grantors, or their heirs or assigns.

The ground upon which the trust is attacked, and the court asked to declare it void, is that the terms of the trust violate that rule of law known as the Rule against Perpetuities.

It is necessary in order to determine whether the trust is objectionable, to consider just what the rule is, and what is its object and purpose.

The rule against perpetuities was established to prevent post mortem control of property. It forbids the creation of estates which are to vest, or come into being, upon a remote contingency, and where the vesting of an estate or interest is thereby unlawfully postponed.

It is contrary to the policy of the law that there should be any outstanding titles, estates, or powers by the existence, operation, or exercise of which at a period of time beyond lives in being, and twenty-one years and a fraction thereafter, the complete and unfettered enjoyment of an estate with all the rights, privileges, and powers incident to ownership should be qualified or impeded. When this is the case, as the court say in *Philadelphia* v. *Girard's Heirs*, 44 Pa. St. 26, they are called perpetuities, not because the grant or devise as written would actually make them perpetual, but because they transgress the limits which the law has set in restraint of grants or devises that tend to a perpetual suspension of the title or of its vesting, or, as is sometimes with less accuracy expressed, to a perpetual prevention or restraint upon alienation.

This rule of restraint upon alienation has frequently been confounded with the rule against perpetuities. They are, however, separate and distinct rules, although their object is one and the same,—the prevention of property being taken out of commerce, locked up, or so held that it cannot be conveyed. It is important therefore in the consideration of cases to bear in mind that the two rules are independent and distinct. Gray on Perpetuities, § 236,

thus speaks of the two rules:—"There are two distinct rules of law by the joint action of which the tying up of estates is prevented: (1) Estates cannot be made inalienable: (2) Future estates cannot be created beyond the limits fixed by the rule against perpetuities."

The rule against perpetuities concerns only remote future and contingent estates and interests. It applies equally to legal and equitable estates, to instruments executing powers, as well as to other instruments. *Duke of Norfolk's Case*, I Vern. 164, (3 Ch. Cas. 48); Gray on Rule against Perpetuities, § 411. A limitation that is valid in the case of a legal estate is valid in the case of an equitable estate. If an equitable estate, as for instance a trust, is so limited that it creates a perpetuity, a similar limitation of a legal estate equally creates a perpetuity. *Goddard* v. *Whitney*, 140 Mass. 100; *Kimball* v. *Crocker*, 53 Maine, 266; *Ould* v. *Wash. Hosp.*, 95 U. S. 303, 312.

What then is a perpetuity?

It is a grant of property wherein the vesting of an estate or interest is unlawfully postponed. The law allows the vesting of an estate or interest, and also the power of alienation, to be postponed for the period of a life or lives in being and twenty-one years and nine months thereafter; and all restraints upon the vesting that may suspend it beyond that period are treated as perpetual restraints and void, and estates or interests which are dependent on them are void. Nothing is denounced as a perpetuity that does not transgress this rule, and equity follows this rule by way of analogy in dealing with executory trusts; and those trusts which transgress the rule are called transgressive trusts, being in equity the substantial equivalent of what in law are called perpetuities. Fearne on Rem. 538 n. "But the limitation, in order to be valid, must be so made that the estate or whatever is devised or bequeathed, not only may, but must necessarily, vest within the prescribed period. If by any possibility the vesting may be postponed beyond this period, the limitation over will be void." *Fosdick* v. *Fosdick*, 6 Allen, 41; *Brattle Square Church* v. *Grant*, 3 Gray, 142. Lewis in his work on Perpetuities gives the follow-

ing as an accurate definition of a perpetuity: —"A perpetuity is a future limitation, whether executory or by way of remainder, and of either real or personal property, which is not to vest until after the expiration of, or will not necessarily vest within, the period fixed and prescribed by law for the creation of future estates and interests, and which is not destructible by the persons for the time being entitled to the property subject to the future limitation, except with the concurrence of the individual interested under that limitation."

The rule against perpetuities has no application to vested estates or interests. Gray on Perpetuities, § 205. It concerns itself only with the vesting, the commencing of estates, and not at all with their termination. It makes no difference when such a vested estate or interest limited terminates. *Routledge* v. *Dorril*, 2 Ves. jr. 366; *Evans* v. *Walker*, 3 Ch. Div. 211; *Hampton* v. *Holman*, 5 Ch. Div. 183; see 14 Am. Law Review, 237. When an estate or interest vests in a person he is the owner and can alienate it. *Fosdick* v. *Fosdick*, 6 Allen, 41; *Kimball* v. *Crocker*, 53 Maine, 266; *Merritt* v. *Bucknam*, 77 Maine, 258; *Seaver* v. *Fitzgerald*, 141 Mass. 401.

Examined in the light of the foregoing rules and principles, we are unable to discover wherein the deeds in question offend the rule against perpetuities. The trustees took the legal estate. The beneficial or equitable estate was reserved to the grantors and their representatives. All interests legal and equitable were vested. Nothing was postponed. The beneficial enjoyment of the estate absolutely and unqualifiedly vested in the persons who, prior to the delivery of the deeds, held the legal title. Each of these persons as the owners of the equitable estate, after the deeds were delivered, possessed over his own equitable interest the same power of sale, conveyance, devise, and disposition, as prior to the deeds he had over his undivided interest in the legal estate. Upon the exercise of any of these powers, the person in whose favor it might be exercised would become fully possessed of such equitable and beneficial interest. The trustees as the holders of the legal title, during the continuance of the trust, have the fullest powers of sale

and conveyance, so that the alienation of the property is absolutely unfettered.   The owners of an equitable estate, like the owners of a legal estate, can alienate or assign their interest.   There is nothing in these deeds that prohibits this.   By an examination of the deeds of trust it will be perceived that neither the rules, nor the reason of the rules, have been transgressed.   The land is as alienable, in legal contemplation, as if the deeds had never been executed.   No provision is disclosed looking to any future, contingent or remote estate, which, springing into being in future, would hinder free alienation by imposing a clog on the title which those now vested with the present title and possession could not remove.

But there is another point which is fatal to the plaintiff's contention that these trust deeds are obnoxious to the rule against perpetuities.   This rule does not apply to interests which though future are destructible at the mere will and pleasure of the present owner of the property.   " A future estate which at all times until it vests is in the control of the owner of the preceding estate, is, for every purpose of conveyancing, a present estate, and is therefore not obnoxious to the rule against perpetuities."   Gray on Perpetuities, § 443.   The author clearly points out in sections 140 and those that follow, that a perpetuity is an indestructible interest, and while he shows that it has another artificial meaning, or "an interest which will not vest till a remote period," yet in all his illustrations he shows clearly that interests which are destructible are not perpetuities.   This doctrine is laid down by Chief Justice Gibson in *Hillyard* v. *Miller*, 10 Penn. 334, wherein he cites with approval the definition of a perpetuity as given by Lewis, and also in *Mifflin* v. *Mifflin*, 121 Pa. St. 205.   In the latter case, the court, in considering the provisions of certain deeds which were claimed to be inoperative because of the rule against perpetuities, uses this language: —" But the estate of Mrs. Mifflin was neither inalienable nor indestructible.   It was entirely within her power to become the owner in fee of the estates granted and to totally defeat any ulterior limitations.   It proves nothing to say she did not exercise her power and that therefore the situation is the same as though she never had the power.   For certain pur-

poses and in certain cases that, of course, is true. But in considering merely the application of the rule against perpetuities, it is not true, because that rule requires that the estates in question should be indestructible, and an estate which can be destroyed by the person who holds it for the time being is not indestructible."

So in another recent case in Pennsylvania the court say : "Aside from this it was competent for all the parties in interest at any time to defeat the power and to take the property discharged thereof ; under these circumstances, we cannot say that the trust created a perpetuity." *Cooper's Estate,* 150 Pa. St. 576 ; *Lovering* v. *Worthington,* 106 Mass. 86, 88 ; *Bowditch* v. *Andrew,* 8 Allen, 339 ; *Goesele* v. *Bimeler,* 14 How. (U. S.) 589.

The very definition of a perpetuity as given by Lewis has its application to a future limitation "which is not destructible by the persons for the time being entitled to the property subject to the future limitation, except with the concurrence of the individual interested under that limitation." The deeds in question contain certain express powers of revocation. The equitable owners of the estate have therein expressly reserved the right at any and all times "to alter, change, revoke, annul and destroy all and every the trusts hereby created as respects their respective shares and interests in the premises, and to declare, direct and appoint such other uses and trusts if any concerning their respective shares and interests in the said trust estate or any part thereof, as they shall respectively choose or think proper, anything herein contained to the contrary notwithstanding."

These powers clearly provide for a complete revocation of the trusts at any time, and thereby remove the case from the rule against perpetuities.

But it is argued for the plaintiff that, admitting the interest of the beneficial owners to be vested, and alienable, the existence of the legal estate in the trustees with a power of sale of indefinite duration, which may be exercised after the expiration of lives in being and twenty-one years, tends to a perpetuity ; and that, under the authorities, a power of sale conferred upon one not the owner

of the beneficial interest in land, if it may be exercised at an indefinite or too remote period, is void.

It is true that if an unlimited indestructible power exists, it does restrain free alienation by the one, who, subject to that power, is the owner of the fee. " A power of sale suspended indefinitely over the fee is open to the same objection as an executory devise or springing use to take effect whenever A or his heirs shall do a given act." Lewis on Perpetuities, 547. Thus in *Tullett* v. *Colville*, 2 L. R. Ch. (1894,) 310, a devise of certain property was made to trustees, and the trustees were directed to carry on the business of the testator as a gravel contractor " until my gravel pits are worked out, and then sell the said gravel pits and the free-hold land on which the same is situated." The court held that this power of sale was too remote and that the rule was violated, because, while the gravel pits might be worked within the prescribed limits of the rule, yet they might not be so worked out, and the power of sale might not go into operation until an uncertain and possibly too remote time in the future. " The true reason for holding such powers good," says Gray in his work on Perpetuities, " is that the trusts to which they are attached must come to an end, or can be destroyed, within the limits fixed by the rule against perpetuities." Speaking further in relation to powers, he says, § 506 :— " To sum up the law as to powers in connection with settled property : —(1)   Sometimes the power ceases as soon as the equitable fee or absolute interest vests in possession :   (2) Sometimes the power can be exercised until the owner of the equitable fee or absolute interest calls for the legal estate :   (3) Sometimes the power can be exercised within a reasonable time after the fee or absolute interest has vested in possession, such reasonable time being not over twenty-one years after lives in being :   (4)   Sometimes the power is created to be exercised on a contingency which may happen after the legal fee or absolute interest has vested in possession, and which may be more than twenty-one years after a life in being. In the first three cases the power is not void for remoteness ; in the last case it is."

In the case at bar the powers of sale in the trust deeds are

within the second class.  The owners of the equitable fee are by
the express terms of the deeds entitled to call for a conveyance of
the legal estate from the trustees and thereby to destroy and
finally determine the trust.  The power, therefore, does not hang
suspended over the fee like an unbarrable executory devise, but is
subject to be barred and destroyed by the cestuis que trustent, or
any one of them.  *Biddle* v. *Perkins*, 4 Simons, 135 ; *Wallis* v.
*Thurston*, 10 Simons, 225.  True, here is a trust to sell for all
time, but revocable at pleasure.  What is there in these ·deeds
that tends to a perpetuity if we clearly observe what that means ?
There is in these deeds that which it is settled makes the power
valid although in terms perpetual,—and that is the power of
revocation.  2 Sug. Pow. 472.  A trust and a power of sale that
continue only at the pleasure of the beneficial owner cannot pos-
sibly be said to be an illegal restraint on alienation.  The purpose
of the trust was lawful and in harmony with the policy of the law.
It was created to secure a more convenient management of these
large landed estates, and less trouble and delay in passing title to
the grantees who might from time to time purchase portions of
these distant and unsettled tracts.

A recent case in Illinois involved a conveyance to three trustees
in trust for an unincorporated company, the property being con-
veyed to the trustees and their heirs and assigns forever.  They
were given power to sub-divide, improve, sell and convey.  The
court, after noting several definitions of the rule against perpetui-
ties, makes use of the following language: — " The mere creation
of a trust does not ipso facto suspend the power of alienation.  It
is only suspended by such trust when a trust-term is created, either
expressly or by implication, during the existence of which a sale
by the trustee would be in contravention of the trust; where the
trustee is empowered to sell the land without restriction as to time,
the power of alienation is not suspended although the alienation is
in fact postponed by the non-action of the trustee or in consequence
of a discretion reposed in him by the creator of the trust. . . . . .
There is nothing in the trust agreement in this case having the
slightest tendency to create a perpetuity.  The land was to be

conveyed to the trustees to be sub-divided and improved and then sold, and the time of sale was left wholly to their discretion; indeed the whole scheme of the association was to purchase, subdivide and improve suburban property for the purpose of placing it at once upon the market for sale.  No trust-term was created and a conveyance of the land, or any part of it, at any time was no violation of the trust. Where there are persons in being at the creation of an estate capable of conveying an immediate and absolute estate in fee in possession, there is no suspension of the power of alienation, and no question as to perpetuities can arise." *Hart* v. *Seymour*, 147 Ill. 598.

There is nothing whatever done by the terms of these deeds, in the case before us, but to create an agency to sell land; an agency, to be sure, that is to continue after death and to be exercised for heirs, devisees, grantees, etc., until, and only until, any one sees fit to put an end to it.  But an agency to continue after death being impossible, the mode of doing it was by a trust with powers by which the ownership is vested in trustees, and the beneficial interest dealt with under these powers.

When the position of the parties and of the property is considered, it becomes apparent that this was the object of the arrangement. The property was land bought in the last century. The owners lived in England and France.  A sale required that all should join, and agencies were always liable to be revoked, or become impracticable by settlements, so that there would be no delegation of authority.  The remedy was an agency that would continue, and there could be none unless the title was transferred, the legal title thus being vested in trustees, and the equitable title in the beneficial owners.  The parties by executing these deeds attempted to accelerate alienation and avoid any retarding of it. The purpose of these deeds was to make property more readily marketable, more conveniently alienable,—the very object which the rule against perpetuities was adopted to subserve.  When the reason of the rule fails, the rule itself has no application.

It may be proper to state that we have carefully examined the decisions to which our attention has been called by the learned

counsel for the plaintiff, and which, perhaps, are not in complete harmony with some of the views enunciated in this opinion.

The case of *Slade* v. *Patten*, 68 Maine, 380, is one of those cases. There the testator devised to his four daughters certain portions of his estate with the proviso that the parts and proportions devised and bequeathed to his four daughters, and their heirs, instead of passing into their hands, were to go into the hands of two trustees, " to hold, manage and dispose of said parts and the property received therefor, for the use and benefit of said [four daughters] and their heirs, according to the discretion of said trustees."

This devise is distinguishable from the Bingham trust in the important respect that the will contained no clause giving to the cestuis que trustent the right to revoke or annul the trust. The power of revocation reserved in the trust deeds in the case at bar makes a most important difference between those deeds and the devise involved in *Slade* v. *Patten*. The decision there seems to be based on the conclusion that no provision was made for the termination of the trust, but that it was to be continued for the benefit of the " heirs " of the daughters, and therefore to continue indefinitely. " There is no provision for the termination of the trust estate," remarks the court.

In one paragraph of the opinion the court makes use of the following language : — " But assuming it to have been the testator's intention that on the decease of his daughters their respective shares should go to the heirs of such daughters in fee simple, still, this would create a perpetuity, because it was possible, that they might have heirs unborn at the testator's death and in whom the estate would not vest within lives in being and twenty-one years and a fraction afterwards."

This statement is absolutely inconsistent with the facts of the case as well as the well settled principles of law. It cannot admit of doubt even that a devise of property to a daughter for life and at her death to her heirs in fee is perfectly good.

But the foregoing statement from the opinion may be regarded as only a dictum. The real question which the court decided was

that the word "heirs" was a word of general import and not limited to those persons who would be heirs within a life in being and twenty-one years and a fraction thereafter, and therefore the trust undertook to preserve the estate for persons who might become heirs indefinitely and hence violated the rule.

The interests devised, however, were clearly vested interests. The legal title was given to the trustees, the equitable fee to the daughters and their heirs, but all interests were present and vested. The legal estate vested in the trustees at the testator's death, and at the same time the entire equitable interest limited to the daughters and their heirs vested in them. No other interest was devised or bequeathed. All the estates and interests that were ever to arise vested immediately upon the testator's death. After correctly stating the rule, the court says: — "In view of the trust, therefore, it must be deemed void as creating a perpetuity."

From the expressions in the opinion to which we have referred, it seems to have been assumed that a trust which will not or may not *terminate* within lives in being and twenty-one years and a fraction afterwards is void as creating a perpetuity. But this is not correct. It cannot be sustained either upon principle or authority. A future limitation that may not *vest* within that period creates a perpetuity, and is therefore void. But a limitation that must vest, if at all, within the period does not create a perpetuity, and it makes no difference when the trust or interest limited *terminates*, if it has *vested* within the period. "All that is required by the rule against perpetuities is, that the estate or interest shall vest within the prescribed period." *Seaver* v. *Fitzgerald,* 141 Mass. 401, 403. The right of possession or enjoyment may be postponed longer.

The reasoning of the court was wrong. No injustice was done to the testator's daughters, however; for, owing to his having used language which by itself expressed an absolute gift to his daughters and their heirs, followed by a proviso that trustees should hold the legal title in trust for them and their heirs, the court, by rejecting the proviso in reference to the trustees as void, decided that there was an absolute gift by devise to the daughters which took effect.

The opinion, therefore, in *Slade* v. *Patten* cannot be sustained upon authority. *Barnum* v. *Barnum*, 26 Md. 119, is a case where the owner of hotel property devised it to trustees with directions to lease it, but prohibited alienation during the term of a trust which exceeded lives in being and twenty-one years thereafter. The court held such a trust void, and gave effect to an alternative limitation contained in the will. In this case there was an absolute suspension of the power of alienation for a period prohibited by the rules of law, unlike the case at bar.

The cases of *Deford* v. *Deford*, 36 Md. 168, *Gouldsboro* v. *Martin*, 41 Md. 488, and *Collins* v. *Bernard*, 63 Md. 162, would seem to support the dictum of the reasoning in *Slade* v. *Patten*, and these Maryland cases are the only ones to which the attention of the court has been called, or which in the examination of the case before us, we have been able to find, supporting that doctrine. But the doctrine of these cases is opposed to the great trend of authority elsewhere, and Gray, in his very thorough and valuable work, speaks of these cases as grave, practical errors growing out of confounding the rule against perpetuities with the rules disallowing restraints on alienation.

It is unnecessary to consider any of the other objections raised, inasmuch as the conclusion to which the court has arrived determines the validity of the trust deeds, and thus disposes of the case.

*Judgment for defendant.*