FRANCIS BARTLETT, TRUSTEE, vs. HERBERT M. SEARS,
TRUSTEE AND EXECUTOR, ET ALS.

*Third Judicial District, New Haven, June Term, 1908.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE AND THAYER, Js.

The primary and usual meaning of a term used in a will must govern, unless the context shows that the testator employed it in a different sense, if, thus construed, the provisions of the will, as applied to the estate, have an intelligible and sensible import.

The primary and usual meaning of the term "issue," when used as a word of purchase, is descendants of every degree.

Where a will gave a large estate in trust for the testator's daughter for life and upon her death to her issue, with remainder over in case of her death without issue, the intent to use the term "issue" as

---

* Transferred from the second judicial district.

meaning such descendants is plain, since it cannot reasonably be supposed that, if the testator's daughter should die leaving grandchildren, the testator would wish to deprive them of all interest in his estate.

Nor can the term be treated as a word of limitation instead of purchase, where the trust is an active one, the trustee having power to withhold income from the life tenant in his discretion, and the life tenant no power of disposition of the estate during her life, and none at her death except to appoint the estate among her issue by will.

It is not sufficient cause to interpret the term as meaning children that the testator was a man of sixty-nine and the life tenant a girl of thirteen when the will was executed, and that the will provided for the contingency of her dying before him leaving issue; nor that the ultimate remainder was to be divided equally among such issue.

The court cannot be influenced in the construction of a will by the determination, before the trial, of the contingencies provided for in the will; it must ascertain the testator's intention from his language read in view of the facts surrounding him; the future course of events may affect the operation of a will, but never its construction.

By the statute of perpetuities in force in this State prior to 1895, and which must still be applied to wills which were executed and came into force prior to that date, a bequest in remainder after a life estate, to the descendants generally of the testator or of any other person, is void.

A life estate to a daughter is not rendered void by void provisions for its disposition after her death; the gift of the life estate, and that of remainder, are clearly separable.

A power of appointment given by will, which may be exercised by a legal appointment, is not rendered void by the possibility of a void appointment being made thereunder: in legal effect it is a power to do what is lawful and not what is unlawful.

Whenever such a power is in fact exercised, the validity of the appointment is to be determined by precisely the same rule as if the testator who created the power had made in his will the same provision in favor of the same appointee: the appointee really takes from the testator, the donee of the power being a mere conduit of the testator's bounty. When, therefore, a power of appointment by will is given, the remoteness of the estates which the will of the donee purports to give must be measured from the death of the first testator, and by the law then in force; it makes no difference that the controlling statute was repealed before the execution of the will of the donee of the power.

*B*, a life tenant under the will of *A*, with power of appointment of the remainder among her issue by will, appointed the estate to be divided among any child or children that should be living at her death, "or issue of any then deceased," each of such beneficiaries

Bartlett *v.* Sears.

to hold his share for life, with power of appointment of the remainder by will, or, in default of such appointment, with remainder to those who would inherit from such beneficiary if he had died intestate. *Held:*—

1. That this appointment was valid under the common law rule against perpetuities as respects the life tenants, since their estates became vested at the death of *B*, who was in being at the death of *A*.

2. That it was also valid under the former statute against perpetuities, so far as concerned the life estates given to children.

3. That while the appointment to the issue of deceased children would not be valid under said statute, if it were an independent provision, the entire gift for life, to children or their issue, may properly be treated as a class gift, the class including some members who were, and others who were not, capable of taking the estate bequeathed to them. Under such a provision the entire estate will pass to those who were capable. As *B* left two children at her death, her will operates, therefore, as a valid appointment of life estates to them.

The will of *B* also gave her husband a discretionary power at any time after any of the life tenants came of age to enlarge their estate to one in fee simple. *Held* that this power, if exercised at the majority of either or both of the children of *B*, will finally vest the title under the will of *A*, in a manner valid under both the common law and the former statute against perpetuities, since the estate will be vested within twenty-one years after the death of *B*, a person in being at the death of *A*, and in her "immediate issue."

The power of appointment given to her children by the will of *B* is void under the common law rule against perpetuities, since it would vest the title in persons only to be ascertained on the death of such children, which might exceed twenty-one years after the death of *B*, the first taker under the will of *A*.

The remainders, in default of such appointment, are void under the former statute rule, since they may go to persons not in being at the death of *A* nor the immediate issue of such persons.

The invalidity of such powers of appointment and contingent remainders does not render void the life estates given to *B's* children, nor the power given to her husband to enlarge such estates.

The residuary legatee under *A's* will refused to make any claim as such, and in his brief supported the claims of the appointees under *B's* will. *Held* that this did not alter the duty of the court to construe the wills according to law.

A suit to determine the construction and validity of a will, and the disposition of a trust fund created thereby, is properly brought in this State, in the county where the testator resided and his will was probated, though none of the parties to the suit reside in this State, and though the testamentary appointment the validity of which is in question was by will made and probated in another State, and

Bartlett v. Sears.

a part of the trust fund, originally personal property, has been converted into real estate situated in another State.

Under a gift to such persons as might be directed by an appointment made by an instrument in the nature of a will, but "in the absence of such instrument" then over to others, the latter do not take the whole fund, if the donee of the power executes an instrument in the nature of a will, making an appointment valid in part and void in part; but only so much of it as is not covered by a valid appointment.

Argued June 12th—decided June 25th, 1908.

SUIT by a trustee under the will of John F. Slater of Norwich, deceased, who died in 1884, for the construction of certain provisions in the will, which was made shortly before his decease and admitted to probate shortly after it; brought to the Superior Court in New London County (*George W. Wheeler, J.*) and reserved on a finding of facts for the advice of this court at its term to be held in the Second Judicial District in October, 1908. By stipulation filed under General Statutes, § 483, the cause was then transferred for trial at the June term, 1908, in the Third Judicial District, and heard there. *Superior Court advised that none of the estate affected by said provisions is intestate.*

The will is printed in full in the report of *Bartlett* v. *Slater*, 53 Conn. 102, 22 Atl. 678.

*Charles C. Russ*, for the plaintiff, Francis Bartlett, trustee.

*Walter S. Schutz* and *Stanley W. Edwards*, for the defendant Herbert M. Sears, trustee.

*William F. Henney*, for self as guardian of the defendant minors, Elizabeth and Phyllis Sears.

*Anson T. McCook*, for the defendant Herbert M. Sears, executor of the will of Caroline B. Sears.

*Edward M. Day*, for the defendant William A. Slater, executor and residuary legatee of the will of John F. Slater.

BALDWIN, C. J.  None of the parties to this cause reside in this State; but it was properly brought in New London County, since it concerns the disposition of a trust fund established by the will of a citizen of Norwich admitted to probate by the Court of Probate for the district of Norwich; and all the defendants have entered appearances.

John F. Slater, the testator, bequeathed to the plaintiff $1,000,000 in trust " to hold, sell, invest and reinvest the same at public or private sale from time to time in such manner as he may deem prudent, and to pay the income arising therefrom or such portion thereof as he may consider best, and at such times as he sees fit to my granddaughter Caroline Bartlett during her natural life. Any portion of said income which shall not be so paid over to her by said Trustee shall be invested by him and form part of said trust estate with like powers as to investment, sale and reinvestment."

At the date of the will the testator was sixty-nine years old and Caroline Bartlett was thirteen years old.  This granddaughter and his son William A. Slater, were his only heirs at law.  She afterward became the wife of Herbert M. Sears, and died in 1908, leaving two minor daughters as her sole surviving issue.

The will contained this further provision: " Upon the decease of my said granddaughter if she shall survive me leaving issue, otherwise upon my death if my said granddaughter shall leave issue surviving me then to pay over and distribute said trust fund and any undistributed income thereof to and among and in trust for such issue of my deceased granddaughter. in pursuance of the terms of any instrument in the nature of a will executed by such deceased granddaughter according to the laws of this State, or in the absence of such instrument executed by her, then to pay over and distribute the same equally among such issue.

" If my said granddaughter shall die before me leaving no issue surviving me or shall survive me and die leaving no issue surviving her, then upon the happening of either

contingency three hundred thousand dollars of said trust-fund shall be paid to said Francis Bartlett as and for his own estate, and the remainder of said trust fund, principal and interest shall be paid over and distributed by said trustee to my heirs-at-law."

The trustee asks us whether these dispositions of the remainder are valid.

The primary and usual meaning of the term "issue," when used as a word of purchase, is descendants of every degree. *Davenport* v. *Hanbury*, 3 Ves. Jr. 258; *Leigh* v. *Norbury*, 13 Ves. Jr. 340; Hawkins on the Interpretation of Wills, *87; *Soper* v. *Brown*, 136 N. Y. 244, 32 N. E. 768; *Pearce* v. *Rickard*, 18 R. I. 142, 26 Atl. 38. It was used by the testator as a word of purchase, and not of limitation. His granddaughter had no full life estate, since the trustee, at his discretion, could withhold any part of the income from her, and her issue, should she leave any surviving her, were to take a very different estate, proceeding from her exercise of a power, or in default of that, from a direct bequest.

The primary and usual meaning of a term used in a will is to govern, unless the context shows that the testator employed it in a different sense, if, thus construed, the provisions of the will, as applied to his estate, have an intelligible and sensible import. *Leake* v. *Watson*, 60 Conn. 498, 506, 21 Atl. 1075; *Connecticut T. & S. D. Co.* v. *Chase*, 75 Conn. 683, 692, 55 Atl. 171. It was obviously the intention of the testator, in the will now in question, to secure to Caroline Bartlett and her descendants, if any, who might survive her, the entire benefit of the trust fund, subject to the trusts which he had established as to her, and she might establish as to them. Such an intention was natural and reasonable.

There are but two clauses in the will which by possibility could be considered as indicating an intention to use "issue" otherwise than as expressive of its primary and usual meaning. One is that providing for the event of his granddaughter's dying before him, leaving issue. It is ar-

gued that while a man of sixty-nine might well anticipate the marriage of a girl of thirteen, and the contingency of her death, leaving children, during his own lifetime, it is highly improbable that he should contemplate living to see her have grandchildren. That event, however, might have occurred within twenty years from the date of the will, and "All men think all men mortal, but themselves." It is also coupled with the provision of her dying after him, leaving issue,—and her dying after him, leaving only grandchildren, or leaving children and the issue of deceased children, was an event which he must have considered as not improbable.

The other clause to be particularly considered is that creating the ultimate remainder in favor of her surviving issue equally, in the absence of an instrument of appointment. An equal distribution, however, is as natural a provision in the case of grandchildren as of children, and this clause is fully consistent with an intent to use the word "issue" in its primary and usual sense, whether it be construed as requiring a distribution *per capita* or *per stirpes.* See *Raymond* v. *Hillhouse*, 45 Conn. 467; *Heath* v. *Bancroft*, 49 id. 220; *Soper* v. *Brown*, 136 N. Y. 244, 32 N. E. 768.

The general intent of the testator is plain. It was to secure the whole of this fund to Caroline Bartlett and those of her descendants who might survive her. Had she died leaving as such two grandchildren, instead of two daughters, it cannot reasonably be supposed that the testator would have wished to divert the fund in part to their father and the balance to his own heirs at law. Those heirs were their uncle and their mother. Such a division, if she had died insolvent, might have left them penniless, and in any event would have excluded them from any direct benefit as purchasers under the will.

It was suggested at the bar that a will providing for future contingencies might properly be differently construed according to what in fact might be the event. On the contrary, the only endeavor of the court must be to

ascertain the testator's intention from the language which he used, uninfluenced by any desire to protect interests which, as things turned out, he may, under the rules of law, have left unprotected. *Jackson* v. *Alsop*, 67 Conn. 249, 34 Atl. 1106. The event of a contingency may determine that a bequest shall take effect, although in another event a different disposition of the property was, under the terms of the will, to have been made, which would have been contrary to law and void. *Thresher's Appeal*, 74 Conn. 40, 49 Atl. 861. Such events may thus affect the operation of the will, but never its construction. *White* v. *Allen*, 76 Conn. 185, 189, 56 Atl. 519.

As, then, the word "issue" in Mr. Slater's will must receive its primary and usual meaning, it follows that under the statute of perpetuities, in force when it was made and at the death of the testator, the gift in remainder to the issue of Mrs. Sears, in the absence of an instrument exercising her power of appointment, was void. "Issue" is not equivalent to "immediate issue"; and "immediate issue," by the settled construction of that statute, meant only children. *Tingier* v. *Chamberlin*, 71 Conn. 466, 42 Atl. 718.

The invalidity of this provision for the issue of Mrs. Sears did not affect the validity of her life interest under the trust, that being clearly a separable part of the testator's scheme of disposition. *Andrews* v. *Rice*, 53 Conn. 566, 5 Atl. 823.

Nor did it destroy her power of appointment, provided it should be exercised with due regard to the prohibitions of the statute. The appointment could only be by an act done during her life and taking effect upon her death. The time for making it was therefore not too remote under the common law rule against perpetuities. A power which cannot be exercised except at a time within the limits of that rule is not invalid because the instrument creating it purports to authorize not only an appointment which would be good under that rule, but one that would be void under that rule. Gray on Perpetuities (2d Ed.), pp. 376, 399.

Every testamentary power of appointment by will in favor of the issue of a certain person would on its face appear to authorize its exercise in favor of the issue of the remotest generation. In legal effect, however, it is a power to do what is lawful and not what is unlawful. *Hillen* v. *Iselin*, 144 N. Y. 365, 39 N. E. 368.

Whenever such a power is in fact exercised, the validity of the appointment is determined by precisely the same rule as if the original testator, who created the power, had made in his own will the same provision in favor of the same appointee. Gray on Perpetuities (2d Ed.), § 526*b; Albert* v. *Albert*, 68 Md. 352, 372, 12 Atl. 11; *Graham* v. *Whitridge*, 99 Md. 248, 57 Atl. 609. This must be true, since the appointee really takes from the original testator, the donee of the power acting as a mere conduit of the former's bounty.

Mrs. Sears left a will, which has been duly admitted to probate in Essex County, Massachusetts, of which she was an inhabitant. It is an instrument executed according to the laws of this State concerning the execution of wills. In this will she recited the power given her in the will of her grandfather, and then gave, devised and appointed the trust fund to her husband in trust " to divide said fund and property into so many equal shares as there shall be living at my decease child or children of mine, or issue of any then deceased, and thereupon to transfer, pay over and convey, in fee simple, one of said shares to or among the then living issue of every then deceased child of mine by representation of its parent. And the share so set apart for every then living child of mine to continue to hold in trust during his or her natural life, and to pay to him or her the net income arising therefrom or such portion only thereof as my said husband may consider best and at such times as he may see fit, or to apply the same to the support and education of such child, and any of said income which shall not be paid over to any such child, or so applied, shall be added to the principal or capital of the trust fund then held for him or her as part thereof henceforth.

And I give to my said husband full power in his absolute and uncontrolled discretion to pay over, transfer and convey in fee simple to any such child who has arrived at full age any part or the whole of the principal or capital of the share then held in trust for such child, free and discharged thenceforth from any trust. But the power so to retain and add to the capital such part of such income as he shall see fit and also the power to pay over, transfer and convey to any child of full age any part or the whole of the principal or capital of the share then held in trust for such child are given to my said husband only and not to any other trustee. And every other trustee than my said husband shall pay the whole net income of every such trust fund unto that child of mine for whose benefit the same is held in trust, or to his or her guardian, if any, but without any power of alienation or anticipation on the part of any such child, and none of the said income shall be subject to the claims or control of any husband, wife or creditor of any such child. And upon the decease of every such child of mine, to transfer, pay over and convey the principal or capital of the trust property then held for his or her benefit unto such person or persons, and to such uses, as he or she shall direct or appoint by any last will or instrument in the nature of a last will, executed and attested as such after arrival at the age of twenty-one years; but in default of such appointment, then to the same persons, for the same estates and in the same proportions, as would have taken the same if such child had died owning the same property in his or her own right and intestate."

The power which it was thus sought to exercise was a special one. The remoteness of the estates which it purports to give must therefore be measured from the time when it was created, that is, from the death of John F. Slater, so far as respects the common law rule against perpetuities. *Estate of Lawrence*, 136 Pa. St. 354, 20 Atl. 521. Upon the decease of Mrs. Sears, the estates in favor of the then living issue of any of her children who might die before her were to become vested; the legal title abso-

lutely, and the beneficial interest immediately and unaltera-
bly: the legal title supporting the estates in favor of her
children was likewise then to become absolutely vested, as
well as the beneficial interests in the income for the life of
each child; but it was not so with the interests in remainder
after each life estate. The trust was an active one.
Neither child had an absolute right to demand any part of
the principal from the trustee during her life; and in de-
fault of any appointment by will her share was to go to
others, not by descent, but as purchasers under the power
given to her mother by the will of John F. Slater. It was,
however, set apart, as hers, from the date of her mother's
death, and a certain interest for life in the income was then
created in her favor. This interest having thus vested
immediately after the expiration of a life which was in be-
ing at the death of John F. Slater, fell within the limits of
time fixed by the common law rule, and was therefore, so
far as concerns that, not void for remoteness. *Connecticut
T. & S. D. Co.* v. *Hollister*, 74 Conn. 228, 232, 50 Atl. 750;
*Pulitzer* v. *Livingston*, 89 Me. 359, 36 Atl. 635; *Johnston's
Estate*, 185 Pa. St. 179, 185, 39 Atl. 879.

It was also an estate given to the immediate issue of one
in being at the death of John F. Slater, and so, considered
by itself, was not affected by the statute of perpetuities
which was in force at his death.

Was it affected, either by the rule or the statute, on ac-
count of the manner in which it was linked in the exercise
of the power, with other interests more remote in charac-
ter?

Here again the test must be the effect which could
properly have been given to the will of John F. Slater,
had he, in lieu of the provisions which have been quoted,
bequeathed the principal of the trust fund in remainder to
those to whom Mrs. Sears has attempted to send it by her
will; for although the statute was repealed before this will
was executed, it limited the testamentary right of Mr. Sla-
ter, and it is that right upon which hers depends and by
which it is exactly measured. One to whom a power of

appointment is given by will stands to the testator substantially in the position of an agent toward his principal. An agent cannot do that which the principal cannot do.

Such a bequest by John F. Slater would have been to such children of his granddaughter as might survive her, "or" the issue of any child of hers who might have died before her; the fund to be divided into a corresponding number of equal shares, one of which was to pass at once to the issue of any deceased child, and each of which, in the case of a surviving child, was to be held upon a long trust, with remainder over. As this would contemplate a provision both for children and grandchildren of Mrs. Sears, should she leave grandchildren by a deceased child, it is plain that so far as the interest in the grandchildren is concerned, it would be too remote under the statute. The word "or" cannot fairly be understood as an alternative provision, under which grandchildren by a deceased child would take only if there were no children.

A class gift, however, might have been created by Mr. Slater, in which the class, as described, contained some members who were, and others who were not, capable of taking the estate bequeathed to them; with the result that the entire estate would pass to those of the former description. Mrs. Sears for certain purposes could in effect make a will for him. The language of her will with respect to those purposes may fairly be read as intended for the benefit of such a class.

In 1903, when she executed it, she had two daughters, as the only issue of her marriage. One was ten years old and the other eight. She would naturally wish, under such circumstances, to provide for her children whether their number should be increased or not, without discrimination, and to let the issue of any who might not survive her take as the representatives of their parent. To accomplish this purpose she formed a class consisting of her children, who would be competent to take, and of the issue of any deceased children, who would be incompetent to take. The fund was a unit. The number of shares into which it

was to be divided could only be ascertained upon her decease, and when then ascertained was unalterable. A bequest to such a class, to be equally divided among them, enures to the sole benefit of such as are competent to receive it. *Downing* v. *Marshall*, 23 N. Y. 366, 373. The trust fund is therefore to be divided into two shares, only; the class, as formed upon the decease of Mrs. Sears, consisting of the two daughters who were living when she made her will.

Each of these, being her "immediate issue," was competent to take under the statute against perpetuities, and took within the time allowed by the common law rule against perpetuities.

Being competent to take, all the provisions in their favor which were to take full effect during their lives are valid. The terms of the trust to endure for their lives are not beyond the authority given by the will of Mr. Slater. Their father, in his discretion as trustee, may give to each her full share of the fund at her majority, for if she reaches full age, it must be within twenty-one years from her mother's decease, and her mother was in being when John F. Slater died. The will of Mrs. Sears is to receive the same construction in these respects as if she had designated her two daughters by their individual names. Gray on Perpetuities (2d Ed.), §§ 523*c*, 523*d*.

Different considerations apply to the remainder interests, which Mrs. Sears attempted to create, to take effect after the decease of each child.

No estate in the principal of the fund was given by her to either child. There was no such general power of appointment by either deed or will, as might have been construed to carry an equitable title. Gray on Perpetuities (2d Ed.), § 524. The trustee may or may not exercise his discretion in favor of either, at her majority, should she reach that age, and should he be then living. During the life of each daughter, she can do no act immediately affecting the principal of her share. It is to devolve on persons to be first determined on her death; which may occur far later than twenty-one years after the decease of her mother.

The vesting of the beneficial interests in the principal could not have been so long postponed by any direct provision in the will of John F. Slater, and therefore could not be under the testamentary power granted by him to Mrs. Sears.   Gray on Perpetuities (2d Ed.), §§ 514–516. It is also, by reason of the statute of perpetuities, fatal to the alternative remainder in favor of those who would take by law intestate estate of a child, dying without exercising her power of appointment, that this might send the fund to those neither in being at the death of John F. Slater nor the children of such persons.

It follows that the power of appointment given in the will of Mrs. Sears, and also the remainder over in default of an appointment under that power, are void.

These provisions, however, do not necessarily defeat or abridge the prior estates, which were to take full effect during the lives of her children.   They are separable from these, and to carry the scheme of disposition found in the will of Mrs. Sears into effect, as far as may be, comports best with her manifest intention.

The will of John F. Slater purported to require the trustee, upon the death of Mrs. Sears, to pay over and distribute the trust fund to and among and in trust for her issue, " in pursuance of the terms of any instrument in the nature of a will executed by " her " according to the laws of this State, or in the absence of such instrument executed by her, then to pay over and distribute the same equally among such issue."   She has left an instrument of the kind described, but its terms can be given effect only in part. This does not present the case of the absence of such an instrument.   The instrument exists, and is effectual to convey valuable interests to those whom it was intended to benefit.   To support it as far as may be, carries out, *pro tanto*, the manifest intent of John F. Slater, as well as of Mrs. Sears, and prevents the occurrence of a contingency, upon which his will purported to create a void remainder.

Void bequests of personal property enure to the benefit of a residuary legatee.   *Bristol* v. *Bristol*, 53 Conn. 242,

255, 5 Atl. 687. The residuary bequest to William A. Slater invested him with the equitable title to the share of the trust fund to be set apart for each of the daughters of Mrs. Sears, subject to the interests created in her favor during her life by her mother's will, and to the power of her father, as trustee, to transfer to her, at her majority, all or any part of the principal.

Mr. Slater has filed a brief, making no claim as residuary legatee, but stating his belief that in his father's will the word "issue" was employed in the sense of "children" and that the testator meant to provide for the children only of Mrs. Sears by his provision for the disposition of the remainder, in the absence of a testamentary instrument in which she effectually exercised her power of appointment. The court, while fully appreciating the motives leading the residuary legatee to pursue this course, must take the will of John F. Slater as it is written, and be guided solely by the rules of law, in giving it its true construction.

The plaintiff has, as trustee, from time to time, purchased and now holds real estate in New York, Illinois, and Missouri, paid for out of the trust fund. The fund has under his administration been considerably increased, and none of the parties in interest have challenged in this proceeding the propriety of these investments.

Notwithstanding this conversion of personalty into realty, as the plaintiff is accountable before the courts of Connecticut for the execution of this trust, which was created by the will of a domiciled inhabitant of Connecticut, it is within our province to advise without reserve as to the construction of that will, and also as to that of Mrs. Sears, though she was a domiciled inhabitant of another State, so far as she attempted to exercise her power of appointment. *Clarke's Appeal,* 70 Conn. 195, 210, 218, 39 Atl. 155; *Clarke* v. *Clarke,* 178 U. S. 186, 192, 20 Sup. Ct. Rep. 873.

The Superior Court is advised that (1) Mrs. Caroline B. Sears exceeded her power of appointment; (2) the limitation of both the statute and rule against perpetuities began

to run from the death of John F. Slater; (3) the terms of
the appointment made by Mrs. Sears created in certain re-
spects a perpetuity; (4) the appointment is severable and
not wholly bad; (5) so much thereof is valid as provides for
a trust during the life of each daughter of Mrs. Sears, sub-
ject to a right in the present trustee, in his discretion, to
transfer all or any part of her share in the fund to her, on
her majority; (6) none of the trust fund is intestate estate
of John F. Slater; (7) the beneficial interest in the fund
belongs to William A. Slater as residuary legatee of John
F. Slater, subject to the life interest of each of said daugh-
ters of Mrs. Sears in her share thereof, and to the right
above described of their father, as trustee; (8) the trust
fund is no part of the estate of Mrs. Sears; and (9) the
plaintiff as trustee is accountable before the courts of this
State for the entire trust fund, notwithstanding his invest-
ments of part thereof in real estate.

No costs will be taxed in this court.

In this opinion the other judges concurred.